## ATTORNEY GENERAL *vs.* BOSTON & LOWELL RAILROAD COMPANY.

Middlesex.  Jan. 19. — Sept. 3, 1875.  AMES & ENDICOTT, JJ., absent.

The St. of 1845, *c.* 224, § 2, only defines the boundary lines of the flats owned by the Boston and Lowell Railroad Company, and confers no new title, right or authority upon that corporation.

Upon an information by the attorney general under the St. of 1866, *c.* 149, to restrain the defendant from filling in his flats without the sanction of the harbor commissioners, it appeared that the defendant began the work of filling prior to the passage of the statute, and that the extent of the flats which he intended to fill up had not, when the information was filed, been defined by any legislative act or by any line of wall or piles except by a sea wall built along one side and about a fourth part of the front of the flats, thence turning and running back a short distance towards the upland and there stopping. The further direction of the wall was not indicated except as its course might be conjectured from the fact that piles had begun to be driven for a continuation of the proposed line and by a plan of the work on paper. *Held,* that the defendant was not exempt from the supervision of the harbor commissioners under the St. of 1866, *c.* 149, §§ 4, 5, excepting from their supervision such erections upon flats covered by tide waters as had been begun before the passage of the statute.

INFORMATION IN EQUITY, filed October 25, 1872, by the attorney general, at the relation of the harbor commissioners, under the St. of 1866, *c.* 149, § 5, to prevent the defendant from filling up flats and building a sea wall and driving piles thereon, in Miller's River, a navigable river, within the tide waters of the Commonwealth. Hearing before *Devens,* J., upon information, answer, general replication and proofs, by whose report, as afterwards amended by agreement of the parties, the case appeared to be as follows:

The defendant owned, as annexed to its upland under the Colonial Ordinance of 1647, a tract of flats on the southwest side of Miller's River, near its junction with Charles River, and across which flats Austin Street ran in a northeasterly direction.

By the St. of 1845, c. 224, § 1, the Boston and Maine Railroad Extension Company was authorized to erect a sea wall and inclose and fill up a parcel of flats on the opposite side of the channel of Miller's River; and by § 2 the defendant corporation was authorized, by accepting that act, "to adopt a line two hundred feet westerly of the said wall, parallel thereto, and .extending from channel to channel, as the line of their flats, instead of the line heretofore claimed, said corporation relinquishing to the Commonwealth all easterly of the said adopted line, and accepting in lieu thereof all between the said adopted line and their upland." The line thus adopted was within the line of the channel of Miller's River, and corresponded with one of the commissioners' lines afterwards established by the St. of 1847, c. 278, beyond which no wharf or pier should be extended into and over the tide waters of the Commonwealth.

In 1858 the defendant began to improve its flats by building sea walls and filling on the southeasterly side of Austin Street, having a general scheme for this work, (as shown on a plan which was made part of the report,) corresponding to the improvement on that side of Austin Street, by filling and by erecting sea walls, and embracing in its ultimate scope the filling of the flats on the northwesterly side of that street. That scheme included the building of a sea wall running northeastwardly along the southeasterly boundary of its flats, and then turning and running northwestwardly along the commissioners' line about two hundred feet, then turning back from that line and running in a southwestwardly direction about forty feet, and then turning and running northwestwardly again about six hundred feet to Austin Street. For the purpose of carrying that scheme into effect, the defendant prosecuted this work from time to time almost every year from 1858 to the time of the filing of this information, when it had proceeded so far that on the southeasterly side of the street the defendant had wholly filled up with gravel the portion of flats next its upland, and to the north of this portion had begun the filling and was continuing it from time to time, and had

built the wall along the southeasterly boundary and thence as far as the end nearest the upland of the forty foot line above mentioned, and just before the filing of the information had begun driving piles for a continuation of the line northwestwardly to Austin Street, for the purpose of retaining the filling to be there made, and on the southwesterly side of the street had filled up a large portion of the flats next the upland, and had begun to fill up a further portion, by dumping upon the flats, without any retaining wall or inclosure, solid material of various kinds, for the purpose of carrying it out to the commissioners' line.

The defendant gave no notice and submitted no plans of work to the harbor commissioners, and had no authority from them, nor from the Legislature, unless the St. of 1845, *c.* 224, (which was accepted by the defendant,) gave such authority.

The defendant contended, and the Commonwealth denied, that the defendant had the right to go on and complete the improvements which it had planned of its flats upon both sides of Austin Street: 1st. By virtue of authority derived from the Legislature by the St. of 1845, *c.* 224 ; 2d. As having already begun the wall, within the meaning of the St. of 1866, *c.* 149, § 4. The case was reported to the full court, to render such decree as the law required.

*D. E. Ware*, for the Attorney General.

*J. G. Abbott & C. T. Lovering*, for the defendant. 1. The defendant under the St. of 1845, *c.* 224, § 2, had agreed with the Commonwealth upon the line of the flats on the north, relinquishing to the Commonwealth all north of the agreed line. The filling and building the sea wall is within this agreed line. The plan of filling the flats and building the sea walls was adopted in 1858, and had been prosecuted from time to time with no change, — everything that is sought to be enjoined being to complete what had been commenced eight years before the St. of 1866, under which this information is brought.

2. Unless the acts complained of are in violation of the St. of 1866, *c.* 149, § 5, this process cannot be maintained. *Common wealth* v. *Alger*, 7 Cush. 53. The St. of 1866 was not only prospective, but it had reference and applied to new undertakings to be commenced after its passage, and was not intended to interfere with or prevent the completion of plans begun to be executed

before its passage. By § 4 it is provided that any persons who are authorized to fill their flats, and who have not absolutely begun such work, shall, before beginning, apply to the commissioners. Section 5 also restrains " all erections and works hereafter made without authority." Both the letter and the spirit of the act confined and applied its provisions, not only to the future, but to works and erections which had not been begun before its passage, clearly not intending to interfere with anything in process of execution. Before the passage of the St. of 1866, the defendant clearly had the right to begin as it did, and fill up its flats to the line established by the various acts in reference to Boston harbor. These acts are in derogation of the rights of property, but they only forbid the filling outside of the lines established. *Commonwealth* v. *Alger*, above cited. See also Sts. 1837, *c.* 229 ; 1840, *c.* 35 ; 1841, *c.* 60 ; 1847, *c.* 278.

The time when the work had been begun, before the passage of the act, or the greater or less degree of rapidity with which it had been prosecuted, or the time it would take to complete it, are not material to inquire into, and cannot affect the question. The only questions are, had the work been absolutely begun before the passage of the act, and was it being prosecuted or had it been abandoned ? Upon the report, there can be no question raised here. The work was begun in 1858. It had been prosecuted up to 1866, so far as to build a sea wall on one side — to fill in a large part of the flats. It had not been abandoned, but was then being executed as fast as the interests of the defendant required.

GRAY, C. J. The colony ordinance of 1647, which is the source of private title in flats below high water mark, provides that the proprietors " shall not by this liberty have power to stop or hinder the passage of boats or other vessels, in or through any sea, creeks or coves, to other men's houses or lands." Anc. Chart. 148, 149. And it is within the authority of the Legislature, for the benefit and security of public navigation, to regulate and restrain the building of wharves or other structures upon the flats under navigable waters wherever the tide ebbs and flows. *Commonwealth* v. *Alger*, 7 Cush. 53. *Attorney General* v. *Woods*, 108 Mass. 436.

The Legislature — perceiving the danger that any building upon or filling up of flats by private owners for their own advan

tage might, by diminishing the volume and changing the course of the tide waters flowing in and out of the harbors, and the consequent increase of deposits, tend to choke up the channels and obstruct navigation — established by the St. of 1866, *c.* 149, a board of harbor commissioners, and by § 2 intrusted to them "the general care and supervision of all the harbors and tide waters, and of all the flats and lands flowed thereby, within the Commonwealth, except the Back Bay lands, so called, in the city of Boston, in order to prevent and remove unauthorized encroachments and causes of every kind which are liable to interfere with the full navigation of said harbors, or in any way injure their channels, or cause any reduction of their tide waters."

By § 4, " all persons that have been or may be authorized by the Legislature to build over tide waters any bridge, wharf, pier or dam, or to fill any flats or to drive any piles below high water mark, who have not already begun such work, shall, before beginning it," give notice and submit plans of the proposed work to the harbor commissioners, and obtain their approval thereof in writing ; and the harbor commissioners are to ascertain " the amount of tide water displaced by any structure or filling hereafter authorized as aforesaid," and to require the parties making the same to make compensation therefor, either by excavating in the same harbor to such an extent as may create a basin for as much tide water as may be displaced by such structure or filling of flats, or by paying a sufficient sum of money for making such compensation, or by improving the harbor in any other mode to the satisfaction of the commissioners.

By § 5 " all erections and works hereafter made without authority from the Legislature, or in any manner not sanctioned by the board of harbor commissioners, where their direction is required as hereinbefore provided, within tide waters flowing into or through any harbor, shall be considered a public nuisance, and liable to indictment as such," or may be restrained by injunction at the suit of the attorney general or other attorney of the Com monwealth, under the direction of the harbor commissioners.

It is under this statute that the present information has been filed. The defendant rests its defence upon two grounds : 1st. On an authority claimed under the St. of 1845, *c.* 224. 2d. On having begun its work before the passage of the St. of 1866,

*c.* 149.  But the court is of opinion that neither ground is tenable.

The St. of 1845 merely defined the boundary lines of the defendant's flats, and conferred no new title, right or authority upon the defendant.

When this information was filed, the extent of the flats which the defendant intended to fill up and build upon had not been defined by any legislative act, or by any line of wall or piles, but rested wholly in the knowledge and purposes of the defendant and its agents, and the case shows that the tide water ebbed and flowed with no obstruction except by a wall built along one side and about a fourth part of the front of the flats and then turning and running back a short distance towards the upland, and there stopping — so that at the time of the filing of this information there was nothing to indicate the further direction of the sea wall, or whether it was to run across the flats towards Austin Street or back to the upland, except so far as its course might be conjectured from the fact that piles had begun to be driven (to what extent does not appear) for a continuation of the proposed line now in question.

It cannot be deemed to have been the intention of the Legislature that an undisclosed purpose, or even a plan upon paper, of work intended to be done, should be deemed a beginning of work, within the meaning of the St. of 1866, *c.* 149, § 5, and exempt the owner from the supervision of the harbor commissioners.

It follows that the defendant, not having obtained the approval by the harbor commissioners of the proposed work, is subject to
                                        *Injunction.*