CAROLINE A. BREED *vs.* CITY OF LYNN.

Essex.  Nov. 8, 1878. — March 3, 1879.  ENDICOTT & LORD, JJ., absent.

The owner of a wharf and dock, who dredges out a channel from his dock over flats belonging to other persons ,and lying between high and low-water mark, cannot recover damages from a city for an injury to the channel by the dis charge of sewage from a common sewer into the dock, whereby the channel is partly filled up and the owner put to additional expense in getting vessels to his wharf; although he dredged out the channel openly and with a claim of right.

A bill in equity, brought by the owner of a wharf and dock, in a harbor, to restrain a city from discharging sewage through a common sewer into his dock, and praying that the city be required either to discontinue the use of the sewer, or to make such change in its construction as to cause it to discharge into the harbor at some other place, was referred to a master to hear the parties and report the form of a final decree, with specific directions to report whether a peremptory injunction should be granted, and whether, and by what other means or scheme, the injury to the plaintiff's estate might be remedied. *Held,* that the master should report upon such means and schemes, proposed by the defendant, although they involved the exercise of the right of eminent domain on the part of the city.

The owner of a wharf and dock let them to a firm of which he was a partner, the firm paying a rent in proportion to the amount of business, and dividing the profits equally between the partners, after deducting charges and expenses, including such rent.  A city emptied sewage into the dock, and thereby caused increased expenses to the firm in the transaction of its business. *Held,* on a bill in equity by the owner against the city, that such increased expenses could not be allowed the owner as damages, or considered as expenses of his estate.

GRAY, C. J.  This is a bill in equity by the owner of a wharf and dock in the city of Lynn, bounding on Lynn harbor, for a nuisance, in discharging filth, through a common sewer constructed by the defendant, into the plaintiff's dock, and thereby partially filling it up and rendering it unfit for navigation.  The bill prays for a perpetual injunction against so maintaining the sewer that its contents shall be discharged into the plaintiff's dock; for a decree that the defendant be required either to discontinue the

use of the sewer, or to make such change in its construction as to cause it to discharge its contents into the harbor at some other place and below low-water mark; and for damages.

Neither party appears to have been very diligent, the plaintiff in prosecuting her suit to a final decree, or the defendant in attempting to remove the nuisance complained of. The bill was filed in February 1876. The first interlocutory decree was entered at April term 1877, when it was ordered that the bill should be taken for confessed, and that the further consideration of the cause, of the nature of the relief to be granted to the plaintiff, and of the question of damages, should be postponed until the defendant should have had an opportunity to remedy the injuries complained of. The cause next came on for hearing in April 1878, when, upon the motion of the plaintiff for a final decree, it was ordered, by consent of parties, that the question of the form of the relief to be granted should be further postponed for one month, with liberty to the plaintiff then to renew her application for an injunction, or for other relief, and that it be meanwhile referred to a master to assess the damages. In June 1878, at a further hearing on the plaintiff's motion for a final decree, it was ordered that it be referred to the same master " to hear the parties, and make report to this court as to the form of a final decree, and therein specifically to report: First. Whether a peremptory injunction should be granted to the plaintiff, restraining the defendant from maintaining the sewer mentioned in the bill, as prayed for in the bill. Second. Whether any other means, and if so, what means, of remedying the injuries complained of in the bill, are practicable, and ought to be required of the defendant by decree of this court. Third. Some scheme by which the sewage now discharged into the dock of the plaintiff may be diverted therefrom and discharged into the harbor of Lynn at some other place, without injury to the plaintiff's estate. And the further consideration of said cause is postponed until the coming in of said master's report, and of the report of the same master upon the question of damages." In October 1878, the cause came on to be heard before a single judge upon the bill, interlocutory decrees, master's report and exceptions of both parties thereto, and was thereupon reserved for the consideration of the full

court; such decree to be entered as the former decrees and the master's report might require, and it being agreed that the decree taking the bill for confessed should not preclude the defendant from relying upon its exceptions to the master's report.

The defendant excepts to the master's report; 1st, "because said master allowed the plaintiff's claim for damages in the sum of $400 for filling up the channel outside the limit of her ownership and right of dockage;" and 2d, "because he refused to pass upon the propositions or scheme to relieve the nuisance, offered by the defendant."

The master's report states that in 1872 the plaintiff's husband (whose title the plaintiff had acquired as tenant in dower and purchaser of the reversion) dredged out a channel, to the depth of four feet below the level of low water, and more than a thousand feet long, about one fourth of which was within his own dock, and the rest extended seaward through flats between high and low-water mark owned by other persons; "that it was dug out openly, and as if with claim of right, without objection from any of the shore owners, and before any boundary lines between the proprietors of these flats had been established;" and that this channel had since gradually filled up, and thereby increased the expense of doing business at the wharf, from lightening the cargoes of vessels of larger draught, and from the employment of vessels of less draught than formerly at a higher rate of freight. Upon these facts, the master was of opinion that the plaintiff's husband in his lifetime acquired a special right to have and maintain this channel, which was of value to his estate, and which he did not share in common with the general public, and that his right in the premises passed to the plaintiff, and she was entitled to recover against the defendant, as damages to her estate, the cost of removing so much of the obstruction to this channel as appeared to have been caused by the action of the sewer in question; and found and reported the amount of the damages, so caused, for the filling up of the plaintiff's dock within the limit of her ownership and right of dockage, at $350, and for the filling of the channel outside that limit and within low-water mark, at $400. The defendant does not except to the allowance of the first, but only to the allowance of the second of these sums.

We are of opinion that this exception is well taken. The plaintiff and her husband never acquired any title or easement, by grant or prescription, in the flats beyond the limits of their ownership. If the filling up of the channel beyond that limit, by which the access to their wharf was rendered more difficult or expensive and the wharf less valuable, could be the subject of prosecution in any form, the injuries to them did not differ in kind from those suffered by other persons owning lands bounding on the harbor or navigating over the flats, and the remedy must be sought by indictment for an injury to the public right of navigation, and not by private suit. *Brayton* v. *Fall River*, 113 Mass. 218. *Blackwell* v. *Old Colony Railroad*, 122 Mass. 1. *Thayer* v. *New Bedford Railroad*, 125 Mass. 253.

That part of the master's report which relates to the other exception of the defendant is as follows : " The plaintiff offered no evidence, and made no suggestions, as to any scheme for relief from the effects of the nuisance; but claimed her right to have the nuisance abated by a discontinuance or removal of the sewer, without suggestion from her as to the mode of abating the nuisance. The defendant offered for consideration several propositions; but as they all involved the exercise of the right of eminent domain on the part of the city authorities, and neither of them had been adopted or approved by the city, I was of opinion that I ought not to attempt to pass upon them, or to propose what action shall be taken by the legally constituted authorities in the exercise of their jurisdiction. And no other suggestion or proof being offered upon the subject, I find and report that there is no plan for the relief of the plaintiff, other than by enjoining the defendant from further maintaining the said sewer by order of the court."

The plaintiff, upon establishing to the satisfaction of the court that the sewer is a private nuisance to her property, is doubtless entitled to an injunction against the city, as she would be against an individual; but the court, in granting such an injunction, always postpones its operation for a reasonable time, in order to enable the defendant to take adequate measures to remove the nuisance without unnecessary injury to the public health or interests. *Haskell* v. *New Bedford*, 108 Mass. 208. *Boston Rolling Mills* v. *Cambridge*, 117 Mass. 396, 401. *Attorney Gen-*

*eral* v. *Birmingham*, 4 K. & J. 528, 548. *Spokes* v. *Banbury Board of Health*, L. R. 1 Eq. 42, 51. *Goldsmid* v. *Tunbridge Wells Commissioners*, L. R. 1 Eq. 161, 170, and L. R. 1 Ch. 349. *Attorney General* v. *Bradford Canal*, L. R. 2 Eq. 71, 84. *Attorney General* v. *Colney Hatch Asylum*, L. R. 4 Ch. 146, 163; *S. C.* cited in *Attorney General* v. *Gee*, L. R. 10 Eq. 131, 135.

In the present case, the bill having been taken for confessed, no hearing on the merits was had before the court; but the court, in order to inform itself of the circumstances which might affect the terms of the injunction, referred it to the master to hear the parties and report the form of a final decree, with particular directions to report whether a peremptory injunction should be granted, and whether, and by what other means or scheme, the injury to the plaintiff's estate might be remedied; and no appeal was taken from that decree. At the hearing before the master, the defendant offered for consideration several propositions, which the master declined to pass upon or report, for the sole reason that they all involved the exercise of the right of eminent domain on the part of the city. We are of opinion that in this the master erred. It is not necessary now to consider whether the court has authority to compel the city to adopt specific measures which would involve the exercise of the right of eminent domain entrusted to the city by the Legislature. It is sufficient to say that it is important for the court to know the nature of the remedies which it is within the power of the city to adopt, in order that the court may judge whether a peremptory injunction should issue, and, if so, when it should be ordered to take effect. The defendant's second exception to the master's report is therefore also sustained.

The remaining question arises upon the plaintiff's exception to the disallowance by the master of her claim for damages to her estate for the increased expense, occasioned by the filling up of the dock, to the partnership of which she was a member, and which by the agreement of copartnership was to have the right to use and occupy the wharf and dock, paying to her as rent a sum in proportion to the amount of business, and to divide the profits of the business equally between the plaintiff and the other partner, after deducting charges and expenses, including

such rent.   Upon this question the court concurs in the opinion of the master, that the increased expense incurred by the partnership cannot be taken into the account as due to the plaintiff individually, nor in any way reckoned as an item of damage to the estate of which she is the owner.

The result is, that the plaintiff's exception must be overruled, the defendant's exceptions sustained, and the case

*Recommitted to the master.*

*S. B. Ives, Jr.,* for the plaintiff.
*R. E. Harmon,* for the defendant.