### ANASTASIA HENRY *vs.* CITY OF NEWBURYPORT.

Essex.    November 9, 1888. — September 5, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Land on Tide - Water — Interruption of Right of Drainage.*

The owner of land adjoining tide-water, but not accessible by navigation from the sea, has no right to have the tide ebb and flow, for the drainage of his premises, across flats or the shore, between his land and low-water mark, belonging to another, and such other owner by filling up his land will not become liable to such owner in an action for the interruption of such drainage.

TORT for filling up flats at a public landing place in Newburyport, and interrupting the plaintiff's right of drainage upon

and across such flats into tide-water. Trial in the Superior Court, before *Thompson*, J., who, after a verdict for the plaintiff, allowed a bill of exceptions, which, so far as material, appears in the opinion.

The case was argued at the bar in November, 1888, and afterwards was submitted on the briefs to all the judges.

*F. W. Hale & N. N. Jones*, for the defendant.

*H. I. Bartlett*, for the plaintiff.

DEVENS, J. Assuming, in the first instance, that the defendant city is responsible for the filling up of the landing place, and that the work done for this purpose is to be treated as the act of its servants, but without so deciding, we proceed to inquire whether any injury has been done to the plaintiff for which she is entitled to a remedy by this action. The plaintiff's premises, upon which stood a building, consisted partly of ledge and partly of flats that had been filled up, forming a sort of wharf faced with stone towards the water. The rear and one side, which were faced with the stone wall, were bounded by the ancient landing place in question, and the tide was accustomed to flow across it and the flats connected with it, up to and about the plaintiff's premises, and to some extent flowed into and out of her cellar until the filling complained of. There was no evidence that the filling was done in any negligent or improper manner. She had no title to any part of the landing place, the fee of which was claimed by the defendant, nor to any flats between her premises and low-water mark. The plaintiff had been accustomed to drain the surface water and the refuse of her premises into tide-water or upon the landing place, according as the tide was in or out, and drains from the cellar led out on the flats beyond her premises. She had also a row of privies projecting over the edge of her premises, so that the droppings fell upon the landing place or into the water. There was no evidence that the defendant knew that the premises were thus drained, except that the superintendent of streets, before the land in the rear of the premises was filled, prevented the plaintiff from digging a cesspool there, into which drains were to empty. There was no access to the plaintiff's premises by water, and thus no interference therewith by the filling of the landing place, but she claims a right to have the tide flow over

it and up to her premises, so that she may thus dispose of her sewage. Even if the filling by the defendant was an unauthorized act, and thus a nuisance, the remedy therefor is by indictment, unless the plaintiff shall show that she has sustained some special and peculiar damage. She does not show this, unless she shows that she has a right, as against the public or the owner in fee of the landing place, to have the water ebb and flow over it and the flats in the rear of her premises, which are a part of it, in order that she may continue to use the tide-water as she has heretofore done.

Whether she has acquired, or could acquire, by prescription, a right to an ebb and flow of the water for this purpose over the lands of others, is a question not before us, as it was not upon any such asserted right that she was allowed to recover, nor was any question submitted to the jury in relation thereto. Nor does the instruction of the court treat the inquiry whether the defendant actually owned (as it claims to do) the fee of the landing place as of any importance. The learned judge who presided held that the plaintiff " was entitled to have the tide ebb and flow up to her premises as it naturally would, and what advantage or benefit might accrue especially to her estate by reason of it she had a right to. . . . She had the right to have the water flow in under this building if she saw fit to, — it would be one of her rights. She had the right to have the tide flow in and flow out, and they have no cause of complaint for her doing that." The question is thus presented, whether it is the right of an owner of land situated in the vicinity of tide-water to have the water flow over the premises of others owning flats or the shore between high-water and low-water mark to his own.

The Colony ordinance of 1641–47, which gave to the proprietor of the upland property in the shore between high-water and low-water mark where the sea did not ebb more than one hundred rods, subject to the public right of fishing, fowling, passage over the same, etc., had but a single reservation which would prevent its enclosure, — " that such proprietor shall not by this liberty have power to stop or hinder the passage of boats or other vessels in or through any sea, creeks, or coves, to other men's houses or lands." Col. Laws, (ed. 1660,) 50, (Whitmore's

ed. 170,) *Liberties Common.* Anc. Chart. 148, 149. This se-
cured to such proprietor, not merely an easement, but a prop-
erty in the land in fee, with full power to reclaim the flats by
building wharves, or enclosing them, so as to exclude naviga-
tion, provided he did not cut off his neighbor's access to their
houses or lands. He could erect wharves or other structures
thereon, could fill up the same, and plant stakes thereon, even
to the obstruction of the public right of fishing. Obviously,
every erection on such flats would interfere, to some extent,
with the pre-existing right of navigation, but it has been deemed
a reasonable construction of the proviso in the ordinance, in view
of its purpose to encourage the building of wharves, etc., to hold
that, so long as no other proprietor was deprived of access to the
sea thereby, they might lawfully be erected. *Commonwealth* v.
*Roxbury,* 9 Gray, 451, 519, note, and cases cited. The Legisla-
ture could, for the protection of the rights of the public in navi-
gation, or for the security of the coast, regulate the use of the
territory between high-water and low-water mark, and could,
without compensation, prohibit taking gravel from a beach, or
building upon flats, whenever in its opinion such prohibition
was necessary. *Commonwealth* v. *Tewksbury,* 11 Met. 55. *Com-
monwealth* v. *Alger,* 7 Cush. 53, 82, 104. *Attorney General* v.
*Boston & Lowell Railroad,* 118 Mass. 345, 349.

While the object of the ordinance has often been declared to
be the erection of wharves and similar structures and the re-
claiming of the flats, we have found no case in which it has been
held that the owner of lands not accessible by navigation from
the sea had any cause of complaint because of having been de-
prived by the erection of wharves or other solid structures, or
by the filling up of flats, of the ebb and flow of the tide to his
premises, or of any right thereby to drain over the lands of
others. · Flats and the beach may be, and often are, sold sep
arately from the upland, and the only provision in the ordinance
which limits the right of the owner thereof in favor of other
proprietors is that already quoted in reference to access by the
water to their lands.

In *Davidson* v. *Boston & Maine Railroad,* 3 Cush. 91, 105, the
petitioners were the owners of tide-mills, across whose flats the
respondent had been authorized to construct a railroad. It was

contended that they had a right to have these flats kept open, and to the free and unobstructed flow and reflow of water over them, so that, when deprived thereof by the construction of the railroad, they would be entitled to damages therefor. It was held that the owners of tide-mills had no right, either as against the public or as against conterminous or adjacent proprietors, to have these flats kept open for the use of their mills, but only to the flow of water in the channel below low-water mark, and where the tide does not ebb. "The adjoining proprietor," it is there said, "to the extent of one hundred rods, may build solid structures, and thus obstruct the flow and reflow of the tide, without objection, provided he does not wholly cut off his neighbor's access to his house or land; and if the mill-owner or conterminous proprietor suffers in consequence, it is *damnum absque injuria.*"

We have discussed the case at bar, thus far, without reference to the St. of 1866, c. 149, which, with the amendments thereto, is embodied in the Pub. Sts. c. 19. By § 2 of this statute, "the general care and supervision of all the harbors and tide-waters, and of all the flats and lands flowed thereby within the Commonwealth," with certain exceptions, are entrusted to three harbor commissioners. The erection of all structures and the filling of all flats below high-water mark are to be done only by license from them, under their supervision, and subject to such terms as they may prescribe. The Pub. Sts. c. 19, § 17, provide that "every erection and work made or done within tidewater, without authority from the General Court or from said board, or in a manner not sanctioned by said board, where a license is required as hereinbefore provided, shall be considered a public nuisance, and liable to indictment as such," or the same may be restrained by injunction at the suit of the Attorney General, or of the district attorneys within their respective districts, upon the direction of the harbor commissioners. While this statute materially diminishes the right of owners of flats in regard to the erection of structures upon them, or the filling up or enclosure thereof, it confers no additional rights upon adjacent or conterminous proprietors. If the defendant has, under the statute, created a public nuisance, there is no liability therefor to the plaintiff. The infringement of the public right is to be

redressed by indictment or other public proceeding as for an injunction. While, if an individual suffers a special and particular damage by reason of a nuisance committed by another, he may maintain an action therefor, it can only be so when some right of his own has been invaded. The statute did not give the plaintiff any right to the ebb and flow of the tide-water over the defendant's land to her own. It was passed for a public purpose, the preservation and security of the coasts and harbors, and for the benefit of navigation, but it left the rights of adjacent and conterminous proprietors *inter sese*, as they before existed. If the act done by the defendant was wrongful, it was a wrong of which only the public could complain.

Nor is the fact important that the plaintiff was actually enjoying the ebb and flow of the tide for the purposes of her drainage when the filling took place. Unless she had a right to have it continued, she has sustained no private or individual wrong. In *Breed* v. *Lynn*, 126 Mass. 367, the owners of a wharf and dock who had dredged out a channel from their dock to some extent over flats belonging to others, and beyond the limits of their own ownership, which channel was injured and filled up by the discharge of sewage from a common sewer into the dock, were allowed to recover so far as the injury was within the limits of their ownership, but not beyond. The fact that they had prepared this channel on the lands of others gave them no special right that it should be kept open and clear, although its filling seriously interfered with access to their wharf.

The instruction that the plaintiff had a right to the ebb and flow of the tide over the landing place and flats to and over her premises was, in the opinion of a majority of the court, erroneous. Unless she had such a right, the loss or inconvenience she sustained did not proceed from any injury inflicted by the defendant of which the plaintiff can complain.

The view we have taken of this question renders it unnecessary to consider the other exceptions presented.

*Exceptions sustained.*