SEARS ᴇᴛ ᴀʟ., TRUSTEES, *v.* WALWORTH MFG. CO. ᴇᴛ ᴀʟ.

Suffolk, December, 1903.

*Flats — Division of Flats on a Headland or Curving Shore — Angle of Side Lines — General Scheme.*

The petitioners in this case claim as appurtenant to their upland a parcel of flats the side boundary lines of which they claim are lines drawn at right angles to the base line of the shore frontage of their upland. The respondents deny the correctness of the petitioners' claim, but differ among themselves as to the true rule for the division of flats on a headland, while the trustees of the New England Trust assert that the matter has been settled by a general scheme adopted by all of the owners of flats along this portion of the shore.

On the general proposition as to the proper division of flats on a headland, it has been argued, and we have been given an opinion to the same effect by an expert engineer familiar with this locality, that the correct method of division is the method adopted in Maine in the case of Emerson *v.* Taylor, 9 Greenl. 42, as reported in the note to Gray *v.* Deluce, 5 Cush, at page 13, which is, to determine the side lines in the case of each individual lot by drawing a base line between the two corners of the lot at the upland, and running from each corner a line at right angles thereto. The perpendicular lines thus obtained running from the intersection of each lot, will in every case diverge by an angle commensurate with the curve of the headland; and the boundary line between the adjacent lots is in such cases deter-

mined by bisecting the angle thus formed. This method, however, must necessarily vary the general direction of the lot lines with each sub-division or change of ownership; and as the side lines of the adjoining owner cannot be affected, the result must, in every case where the headland runs on a marked curve, result not only in a very uneven division of the flats in proportion to the high water line of the upland, but in many cases in the adoption of converging lines instead of the diverging lines called for by the policy of the law. Porter v. Sullivan, 7 Gray, 441. Where the shore line is strongly indented, and especially if the side lines be drawn, as is most usual and natural, from the center of a small headland and the center of a small cove so that each owner has a fair proportion of both headland and cove, the injustice, and in some instances impossibility, of the rule proposed is very marked.

It is undoubtedly true that in an attempt to settle the side lines of a single parcel of flats, in an occasional case, and in private practice, it may be impracticable for an engineer to attempt any general method. But in proceedings in this Court, no such difficulty arises. Land registration itself is an administrative measure adopted by the Commonwealth as a matter of public policy for the better settlement upon an enduring basis of property lines, as well as for a simpler and more economical method of preserving public records. The Court can, and if necessary will, order surveys which might be beyond the powers or needs of a single interested party; and must further select such methods as will not cause a conflict in future cases involving adjacent properties. I am still of opinion, as stated in the decision in Bradstreet, Petitioner, Land Court Decisions, p. 34 ante, that the proper method of division of flats on a headland, in the absence of lines otherwise fixed by the parties, is by radii from the general average curve of the headland. This fixes in each and every case a line entirely consistent with all

prior and subsequent division lines, and which preserves for each lot a property line at low water mark reasonably proportionate to that at high water.

It is argued, however, that whatever the ordinary rule of division may be, it must be controlled in this case by the acts of the parties, the practical interpretation as to the matter of side lines apparent throughout the course of the common title as well as in the course of the titles to adjoining properties, the general plan of construction of streets and wharves adopted by the town and city authorities and the community at large in this part of the city, and the plan of the State authorities in the erection of wharves and similar structures, and the reclaiming of the flats in this part of the harbor.

While it is true that the plan of development adopted by a single adjoining owner as to his property can have no effect (Boston v. Richardson, 13 Allen 146, at 162), yet a valid agreement as to side lines may be inferred from the pursuance of a general scheme in the neighborhood. In Atty. Gen. v. Boston Wharf Co., 12 Gray 553, 559, the mere fact of one side line being fixed by the centre of the street protracted to low water, seems to have been deemed almost enough in itself to create a presumption that the side lines of the flats are to run parallel therewith. In the case at bar all of the facts are present as to the action of the town authorities in regard to the laying out of the streets, of the building of wharves and other structures in the neighborhood parallel therewith, and all the other circumstances from which a general scheme of development, and an agreement therefor, were presumed in Henshaw v. Hunting, 1 Gray 203, and Adams v. Boston Wharf Co., 10 Gray 521, and further, we have in evidence in this case the whole general scheme of development of the flats under the direction of the Land and Harbor Commissioners of the Commonwealth. Winnissimmett Co. v. Wyman, 11 Allen 432, has been cited as authority for the proposition that it is not

a general scheme, but merely the particular circumstances of each individual lot, which is to be considered in such cases. But the Winnissimmett decision seems to me to be merely another authority to the point last cited, the general rule being there disregarded because of a contrary agreement being inferred from the acts of the parties in the erection of their wharf and other indications of their intention to build out on a continuation of their property lines at the upland.

The general rules adopted for the division of flats are mere rules of construction under the ordinance of 1647, and it has been repeatedly declared that the object of that ordinance was the better protection and development of wharves and flats for the benefit of the community through the equitable distribution between the owners of the upland properties of what, prior to that ordinance, were property rights in the public at large. Henry v. Newburyport, 149 Mass. 582. In the case at bar the adoption of radial lines from the upland, or any lines other than those running parallel to the streets, would be contrary to the whole general scheme of development adopted by public authorities, and would result in an exceedingly unequal division of the flats among the owners on this particular headland, closing off two of them entirely from access to deep water, and giving to two others an amount of low water line and flats wholly disproportionate to their ownership of the upland. It is true that this is to a considerable extent the effect of the line adopted in Gray v. Deluce immediately to the west of the property now in question, but in Gray v. Deluce the line of general division was followed in the absence of anything to control it. The Court did not have before it the facts and data present in this case. Adams v. Boston Wharf Co., 10 Gray 521. Moreover it appears from an examination of the original papers and of the record title to the property there under consideration, that the " agreed facts " on which Gray

*v.* Deluce was submitted to the Court were not the facts as they actually existed.

Decree.for petitioner, boundary lines over the flats to run parallel to P st.

D. A. Dorr, C. H. Swan for petitioners.

Carver & Blodgett, J. J. Myers, A. H. Brooks, J. Duff, J. F. Sullivan for respondents.