SAMUEL L. CORSE *vs.* JOHN G. DEXTER.

Plymouth.    December 10, 1908. — May 19, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Watercourse.   Mills and Mill Privileges.   Covenant,* Against incumbrances.

The right of the owner of land through which a watercourse flows, to dam its
   waters and use the head of water thus acquired for the running of a saw mill
   at all seasons of the year in a proper manner and in the usual way in which
   such mills are operated, is a right inseparably connected with the ownership of
   the land and does not depend upon the acquisition by deed or prescription of
   rights above or below the dam, nor does such use create any easement in lands
   below the dam; and therefore such right of an upper riparian owner is not an
   incumbrance upon land conveyed by a lower riparian owner and does not
   constitute a breach of a covenant against incumbrances contained in the deed
   under which such land is conveyed.

CONTRACT for breach of a covenant against incumbrances
contained in a deed of land from the defendant to the plaintiff.
Writ in the Superior Court for the county of Plymouth dated
August 14, 1906.

The case was tried before *Hardy*, J.   The facts are stated in
the opinion.   The jury found for the plaintiff; and the defendant
alleged exceptions.

*F. M. Sparrow*, for the defendant.

*D. T. Devoll*, for the plaintiff.

MORTON, J.   This is an action of contract to recover for breach
of a warranty against incumbrances.   The premises to which the
action relates are situated in Rochester upon a brook or stream
called "Cedar Swamp Brook."   A part of it is also known as
"Dexter River," and another part as "Haskell Brook."   The
premises consist in part of upland and in part of bog or swamp
land.   It is only in regard to the bog or swamp portion of the
premises, comprising about an acre, that it is contended that
there has been a breach of the covenant.   A short distance below
the plaintiff's land is an old dam called the "Dexter Mill Dam,"
over which a road passes.   There was formerly a mill called the
"Dexter Mill."   The mill had not been operated for thirty
to thirty-five years, and it and the dam had fallen into decay.
Above the plaintiff's premises is a mill called the "Haskell Mill"

and a dam which had been operated and maintained for thirty years or more. The plaintiff had heard and he understood at the time that he purchased the land in question of the defendant that the right of the owners of the "Haskell Mill" was restricted so that from the middle of April to some time in September they could only let down water enough to run a full brook. It did not appear, if material, that any representation to that effect was made by the defendant to the plaintiff before the execution and delivery of the deed. The plaintiff bought the land because he thought it suitable for a cranberry bog, and after purchasing it he proceeded to make it into a cranberry bog by levelling it, sanding it, ditching it, setting out vines upon it, and by altering the course of the brook. The result was that the land was flooded by water let down in the operation of the Haskell Mill and held back by the Dexter Mill Dam three times, as the plaintiff testified, during the first summer, and the sand and vines were washed away. The plaintiff thereupon abandoned work on the bog and brought suit against the owners of the Haskell Mill. It does not appear what has become of that suit. The incumbrance which, it is alleged, exists, is a right on the part of the owners of the Haskell Mill, acquired by prescription or deed, to flood the land in the operation of their mill during the summer months from April to September. There was a verdict for the plaintiff and the case is here on exceptions by the defendant, which include amongst others an exception to the refusal of the presiding judge to rule as requested that upon all the evidence the plaintiff was not entitled to recover.

We think that the ruling requested should have been given. The Haskell Mill, it appears, was a saw mill with about eight and one half feet fall and a mill pond of about three hundred and fifty acres. No contention is made that the mill was not appropriate to the size and capacity of the stream and the quantity of water usually flowing therein, or that, when operated, it was not operated in a reasonable and proper manner, or in the usual and ordinary way in which such mills are operated. In the absence of any restriction to the contrary the owners of it had the right to operate their mill at any and all seasons of the year, and there was nothing to show that there was any such restriction. The creation of a head and fall of water and the use of it for mill pur-

poses necessarily interfere with the natural flow of the stream. The right thus to use the waters of a stream is inseparably connected with the ownership of land through which a watercourse flows. It does not depend upon the acquisition by deed or prescription of rights above or below the dam, nor does the exercise of the right in a proper and reasonable manner create any easement in lands below the dam. If the water is let down in an unusual and extraordinary manner and at unusual times and in unreasonable quantities, it may, if continued long enough, result in the acquisition of prescriptive rights by the owners of the mill as against riparian owners lower down. In the present case the mill was operated in a proper manner and in the usual way in which such mills are operated and there was nothing extraordinary or unreasonable in the way in which the water was let down. The flooding of the plaintiff's land resulted from the ordinary operation of the mill and the obstruction to the passage of the water caused by the Dexter Mill Dam. The owners of the Haskell Mill made no other or different use of the waters of the stream than they had a right to make, and they acquired thereby no prescriptive rights over the land belonging to the plaintiff. There was nothing to show any adverse user by them of the plaintiff's land. The plaintiff had the right to widen and deepen the brook where it flowed through his land for the purpose of facilitating the passage of the water, or to build dikes to keep his land from being flooded, or to adopt any other means for that purpose which did not interfere with or obstruct the flow of the brook to the injury of the owners of the Haskell Mill or of riparian proprietors farther down. There is nothing to show that the land was subject to an incumbrance as alleged. See *Cary* v. *Daniels*, 8 Met. 466; *Springfield* v. *Harris*, 4 Allen, 494; *Clapp* v. *Herrick*, 129 Mass. 292; *Whitney* v. *Wheeler Cotton Mills*, 151 Mass. 396.

The conclusion to which we have come on the main question renders it unnecessary to consider the other rulings requested.

*Exceptions sustained.*