ARTHUR S. STRATTON *vs.* MOUNT HERMON BOYS' SCHOOL.

Franklin.    September 16, 1913. — October 29, 1913.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DE COURCY, JJ.

*Watercourse,* Riparian rights. *Practice, Civil,* Exceptions.

*It seems,* that a riparian owner on a small stream may make reasonable use of the water of the stream by diverting it to unconnected land belonging to him which does not border on the stream and is in another watershed if he causes no actual damage present or potential to the riparian proprietors below him.

In an action by one riparian proprietor against another above him on the stream for diversion of the water to unconnected land belonging to the defendant in another watershed, where the presiding judge erroneously instructed the jury that for any use of the water outside the watershed the plaintiff could recover at least nominal damages even if he had sustained no actual loss, but the jury, on evidence warranting such a finding, returned a verdict for substantial damages, exceptions of the defendant were overruled on the ground that the defendant had not been harmed by the error in the judge's instructions.

The reasonableness of the use of the water of a stream by a riparian proprietor depends upon all the material circumstances attending such use, including the nature of the riparian property of an owner lower on the stream and his need of the use of the water.

RUGG, C. J. The plaintiff, the owner of a mill upon a small stream, sues the defendant, an upper riparian proprietor upon the

same stream, for wrongful diversion of water therefrom to his injury. The material facts are that the defendant owns a tract of land through which the stream flows and upon which also is a spring confluent to the stream. Upon this land it has established pumping apparatus whereby it diverts about sixty thousand gallons of water each day from the spring and stream to another estate belonging to it and not contiguous to its land adjacent to this stream but located about a mile away in a different watershed, for the domestic and other uses of a boys' school with dormitories, gymnasium and other buildings and a farm. The number of students increased from three hundred and sixty three in 1908 to five hundred and twenty-five in 1911, while the number of teachers, employees and other persons on the estate was over one hundred. During the latter year there were kept on the farm one hundred and three cattle, twenty-eight horses and ninety swine. There was a swimming pool, laundry, canning factory and electric power plant, for the needs of all of which water was supplied from this source. There was evidence tending to show that this diversion caused a substantial diminution in the volume of water which otherwise in the natural flow of the stream would have come to the plaintiff's land and in the power which otherwise might have been developed upon his wheel by the force of the current.

The defendant requested the presiding judge * to rule in effect that diversion of water to another non-riparian estate owned by it was not conclusive evidence that the defendant was liable, but that the only question was whether it had taken an unreasonable quantity of water under all the circumstances. This request was denied and the instruction was given that the defendant's right was confined to a reasonable use of the water for the benefit of its land adjoining the watercourse and of persons properly using such land, and did not extend to taking it for use upon other premises, and that, if there was such use, the plaintiff was entitled to recover at least nominal damages even though he had sustained no actual loss. The exceptions raise the question as to the soundness of the request and of the instruction given.

The common law rights and obligations of riparian owners upon streams are not open to doubt. Although the right to flowing water is incident to the title to land, there is no right of

* *Hitchcock,* J.

property in such water in the sense that it can be the subject of exclusive appropriation and dominion. The only property interest in it is usufructuary. The right of each riparian owner is to have the natural flow of the stream come to his land and to make a reasonable and just use of it as it flows through his land, subject, however, to the like right of each upper proprietor to make a reasonable and just use of the water on its course through his land and subject further to the obligation to lower proprietors to permit the water to pass away from his estate unaffected except by such consequences as follow from reasonable and just use by him. This general principle, simple in statement, often gives rise to difficulties in its application. What is a reasonable and just use of flowing water is dependent upon the state of civilization, the development of the mechanical and engineering art, climatic conditions, the customs of the neighborhood and the other varying circumstances of each case. Often the amount and character of the flow may be modified to some extent by such use, for which, even though injurious to other proprietors, no action lies. A stream may be so small that its entire flow may be abstracted by the ordinary domestic uses of a farmer. Its bed may be so steep that its rational utilization for the generation of power requires its impounding in numerous reservoirs. But whatever the condition, each riparian owner must conduct his operations reasonably in view of like rights and obligations in the owners above and below him. The right of no one is absolute but is qualified by the existence of the same right in all others similarly situated. The use of the water flowing in a stream is common to all riparian owners and each must exercise this common right so as not essentially to interfere with an equally beneficial enjoyment of the common right by his fellow riparian owners. Such use may result in some diminution, obstruction or change in the natural flow of the stream, but the interference cannot exceed that which arises from reasonable conduct in the light of all circumstances, having due regard to the exercise of the common right by other riparian owners. *Newhall* v. *Ireson,* 8 Cush. 595. *Thurber* v. *Martin,* 2 Gray, 394. *Tourtellot* v. *Phelps,* 4 Gray, 370. *Cary* v. *Daniels,* 8 Met. 466, 476. *Mason* v. *Whitney,* 193 Mass. 152. *Pitts* v. *Lancaster Mills,* 13 Met. 156. *Corse* v. *Dexter,* 202 Mass. 31. *Whitney* v. *Wheeler Cotton Mills,* 151 Mass. 396.

*Strobel* v. *Kerr Salt Co.* 164 N. Y. 303, 320. *Nuttall* v. *Bracewell,* L. R. 2 Ex. 1, *Mentone Irrigation Co.* v. *Redlands Electric Light & Power Co.* 155 Cal. 323.

In the main the use by a riparian owner by virtue of his right as such must be within the watershed of the stream, or at least such that the current of the stream shall be returned to its original bed before leaving the land of the user. This is implied in the term "riparian." It arises from the natural incidents of running water. A brook or river, so far as concerns surface indications, is inseparably connected with its watershed and owes the volume of current to its area. A definite and fixed channel is a part of the conception of a watercourse. To divert a substantial portion of its flow is the creation of a new and different channel, which to that extent defeats the reasonable and natural expectations of the owners lower down on the old channel. Abstraction for use elsewhere not only diminishes the flow of the parent stream but also increases that which drains the watershed into which the diversion is made, and thereby may injure riparian rights upon it. Damage thus may be occasioned in a double aspect. The precise point whether riparian rights include diversion in reasonable quantities for a proper use on property outside the watershed has never been decided in this Commonwealth. There are numerous decisions in other jurisdictions to the effect that the rights of a riparian proprietor do not extend to uses on land outside the watershed. These were made in cases where actual perceptible damages were wrought by the diversion. *Bathgate* v. *Irvine,* 126 Cal. 135, 143. *Williams* v. *Wadsworth,* 51 Conn. 277, 304. *Crawford Co.* v. *Hathaway,* 67 Neb. 325, 353. *Watkins Land Co.* v. *Clements,* 98 Texas, 578, 585. *Miller* v. *Baker,* 68 Wash. 19, 21. *Anaheim Union Water Co.* v. *Fuller,* 150 Cal. 327, 330. *McCarter* v. *Hudson County Water Co.* 4 Rob. (N. J.) 525. *Paterson* v. *East Jersey Water Co.* 4 Buch. 49, 85, affirmed in 7 Buch. 588. See, however, *Jones* v. *Conn,* 39 Ore. 30, 44, 45.

There are numerous expressions to the effect that the rights of riparian ownership extend only to use upon and in connection with an estate which adjoins the stream and cannot be stretched to include uses reasonable in themselves, but upon and in connection with non-riparian estates. See, for example, Lord Cairns in *Swindon Water Works Co.* v. *Wilts & Berks Canal Navigation*

*Co.* L. R. 7 H. L. 697, 704, 705. But see to the contrary, *Gillis* v. *Chase,* 67 N. H. 161 and *Lawrie* v. *Silsby,* 76 Vt. 240; *S. C.* 82 Vt. 505. These principles, however, are subject to the modification that the diversion, if for a use reasonable in itself, must cause actual perceptible damage to the present or potential enjoyment of the property of the lower riparian proprietor before a cause of action arises in his favor. This was settled after an elaborate discussion by Chief Justice Shaw in *Elliot* v. *Fitchburg Railroad,* 10 Cush. 191. That case has been widely cited with approval by courts of many States. The soundness of its reasoning never has been questioned. That was a case where an upper riparian proprietor granted to the defendant railroad corporation a right to erect a dam across a stream and conduct water to its depot not on a riparian estate for use in furnishing its locomotive steam engines with water. The plaintiff, a lower riparian proprietor, was denied the right to recover nominal damages in the absence of proof of actual damages, although the principle was fully recognized that an action would lie for any encroachment upon the substantial rights of the lower owner though causing no present damage. See *Anderson* v. *Cincinnati Southern Railroad,* 86 Ky. 44. In reason, there seems to be no distinction between diversion of water from a stream for use in the locomotive engines of a railroad, which of necessity consume the water by evaporation on their journeys without perceptible return to any stream, and the diversion of water for any other legitimate use outside the watershed and upon non-riparian land. Whether such a use for locomotive engines is within the rights of riparian proprietorship has been the subject of somewhat variant conclusions as to the fact of reasonable use. See *McCartney* v. *Londonderry & Lough Swilly Railway,* [1904] A. C. 301, *Garwood* v. *New York Central & Hudson River Railroad,* 83 N. Y. 400, *Pennsylvania Railroad* v. *Miller,* 112 Penn. St. 34, where recovery has been allowed in favor of a lower proprietor for such use by an upper one. In these cases, however, there was real and perceivable injury to the lower estate. These decisions, while perhaps containing language hard to reconcile with the discussion in *Elliot* v. *Fitchburg Railroad, supra,* do not appear to conflict with its conclusion. The question in such a case is not whether the diversion, being for a legitimate use, is in quantity such as is

reasonable, having regard to all the circumstances, as it is in cases of distinctly riparian uses, but only whether it causes actual damage to the person complaining. Any other conclusion, as is pointed out by Chief Justice Shaw, would lead to the absurd result that every lower riparian proprietor from near the source of a river or any of its confluents to the sea could maintain an action and recover nominal damage for an abstraction and diversion so trifling as to be beyond the possibility of ever causing actual injury. That there can be no recovery for a diversion of water for a proper use, so small in quantity and of such character that it occasions no injury to the present or future use of the lower riparian land is recognized in other jurisdictions. *Baily & Co.* v. *Clark,* [1902] 1 Ch. 649. *Kensit* v. *Great Eastern Railway,* 27 Ch. D. 122, 129. *Harris* v. *Norfolk & Western Railway,* 153 N. C. 542. *White* v. *Whitney Manuf. Co.* 60 S. C. 254. Nor is this inconsistent with the decisions which hold that there may be recovery even though there is no present actual damage, provided an injurious effect may be produced upon the lower estate by the acquirement of right through lapse of time, as in *Stimson* v. *Brookline,* 197 Mass. 568, 573, *Newhall* v. *Ireson,* 8 Cush. 595, *Lund* v. *New Bedford,* 121 Mass. 286, 290, *Ware* v. *Allen,* 140 Mass. 513, and like cases. The distinction is between a diversion which causes a present or potential injury to the lower estate for a valuable use, and one which cannot produce such a result. There have been numerous decisions touching the question whether the appropriation of water by an institution like the defendant to the extent here shown can be regarded as within the rights of a riparian proprietor. *Canton* v. *Shock,* 66 Ohio St. 19. *Filbert* v. *Dechert,* 22 Penn. Sup. Ct. 362. *Medway Navigation Co.* v. *Romney,* 9 C. B. (N. S.) 575. *McCartney* v. *Londonderry & Lough Swilly Railway,* [1904] A. C. 301, 304. *Salem Mills Co.* v. *Lord,* 42 Ore. 82, 98. *Bank of Hopkinsville* v. *Western Kentucky Lunatic Asylum,* 108 Ky. 357, 360. But it is unnecessary to discuss or review them or to decide whether the true rule in such cases is not the one here established.

The governing principle of law in a case like the present is this: A proprietor may make any reasonable use of the water of the stream in connection with his riparian estate and for lawful purposes within the watershed, provided he leaves the cur-

rent diminished by no more than is reasonable, having regard for the like right to enjoy the common property by other riparian owners. If he diverts the water to a point outside the watershed or upon a disconnected estate, the only question is whether there is actual injury to the lower estate, for any present or future reasonable use. The diversion alone without evidence of such damage does not warrant a recovery even of nominal damages.

The charge of the court below was not in conformity to this principle. It would have permitted the recovery of nominal damages in any event, quite apart from the possibility of real injury to the plaintiff. But the defendant has suffered no harm by this error. The verdict of the jury was for substantial damages and there was ample evidence to support such a conclusion.

The defendant's fourth request * rightly was denied. It omitted all reference to a consideration of the rights of the plaintiff as a lower riparian proprietor, and made the defendant's liability hinge only upon its own interest and advantage in the use of the water. The reasonableness of use by a riparian proprietor depends upon all the material circumstances, including the conditions attending lower riparian proprietorship.

*Exceptions overruled.*

*D. Malone,* (*C. N. Stoddard* with him,) for the defendant.

*W. A. Davenport & H. A. Weymoth,* for the plaintiff, submitted a brief.

---

* The ruling requested by the defendant here referred to was as follows: "4. It is immaterial on the question of reasonableness of the defendant's use of the water whether or not in using the water the defendant acted wholly irrespective of the plaintiff's interests and of his necessities or demands for water, so long as the defendant's use was not wanton and was with a reasonable regard to the best interest and advantage of the defendant as owner of the land and in conformity with the general use of riparian owners on this and similar streams."