ARTHUR A. ISBELL & another *vs.* GREYLOCK MILLS.

Berkshire.     September 10, 1918. — October 22, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Tax*, Redemption from tax sale. *Watercourse. Equity Jurisdiction*, To enjoin interference with water rights, Damages. *Damages*, In equity.

One who has an interest in land as a tenant for life in expectancy is entitled to redeem the land from a tax sale.

In a suit in equity by the owner of land through which flowed a natural brook, against a mill corporation, seeking to enjoin the defendant from diverting the waters of the brook for its own use and also for damages, it was found by a master that the plaintiff had suffered no actual damages, the defendant's use of the water having left water enough for the plaintiff's needs, and it was *held* that the plaintiff as a riparian owner on a non-navigable stream had only a right to the reasonable use of the water in common with other riparian proprietors and that, whether the defendant so had diverted the flow of the brook as to injure the plaintiff in the exercise of his right, was a question of fact, on which the negative finding of the master was final, so that the plaintiff, although entitled to an injunction and to nominal damages, was not entitled to recover from the defendant more than nominal damages for the invasion of the plaintiff's right by the unauthorized diversion of the water.

BILL IN EQUITY, filed in the Superior Court on November 6, 1912, by the owners of certain land on West Main Street in North Adams through which flowed a stream called Sherman Brook, a natural watercourse emptying into the Hoosac River, against the Greylock Mills, a corporation, alleging that the defendant unlawfully diverted by a pipe the waters of the brook for the purpose of supplying its mill and other property with water, and praying (1) for an injunction to restrain the defendant from diverting the waters of the brook, (2) to restrain the defendant from using or maintaining its pipe across the plaintiffs' land, (3) for an order to the defendant forthwith to remove the pipe, (4) for damages, and (5) for further relief.

The answer asserted the right of the defendant, under a deed from Charles E. Sherman and others dated February 3, 1881, to maintain its pipe and divert the waters of the brook, except so much of those waters as the plaintiffs were entitled to use.

The case was referred to a master, who made a report containing the findings which are stated in the opinion. The plaintiffs filed exceptions to the master's report and the defendant also filed an exception. The plaintiffs' exceptions were based on the contention that the plaintiffs were entitled to substantial damages. The exceptions were argued before *Chase*, J., who made an interlocutory decree overruling the exceptions and ordering that the report be confirmed and that the bill be dismissed. The plaintiffs appealed.

The plaintiffs then filed a petition alleging that they had discovered new facts and praying that the case be reopened and recommitted to the master. The petition was heard by *Wait*, J., who made an interlocutory decree that the petition be dismissed and that the petitioners (the plaintiffs in the suit in equity) pay $10 costs. The petitioners appealed.

Later the case was heard by *Chase*, J., on a motion for a final decree. He made a final decree overruling the exceptions to the master's report, confirming the master's report and ordering that the bill be dismissed. The plaintiffs appealed.

The case was submitted on briefs.

*F. H. Cande & F. M. Myers*, for the plaintiffs.

*W. F. Hawkins & W. C. Kellogg*, for the defendant.

BRALEY, J. The defendant, while admitting that it has appropriated the water as alleged in the bill, justifies the alleged conversion under a grant which confers the right at least during the lives of the grantors Diana F. Rice, formerly Diana F. Sherman, and Charles E. Sherman, tenants for life under the will of Russell Sherman, who died seised of the farm through which the brook runs. The tenants however having died, the life estates fell in, and the plaintiffs who derive title to the land under Leroy C. Sherman, the only son of Charles, in whom the remainder would vest by the terms of the will, contend that the defendant's estate thereby terminated and that it became, and has continued to be, a trespasser.

But during the life of Diana, who predeceased Charles, the premises were sold for non-payment of taxes to one Richardson, who before the period of redemption had expired and prior to the deed to the mills conveyed the premises to Charles. The deed to the defendant being sufficient in form to pass whatever interest

Charles possessed, it pleads among other defences the tax title in bar. The contention of the plaintiffs that the tax sale was fraudulent is not supported by the record, and, there being no affirmative extrinsic evidence affecting the regularity of the assessment and levy, the recitals in the collector's deed are to be taken as true. Gen. Sts. c. 11, § 8; c. 12, §§ 28–33. St. 1911, c. 370. *Bates* v. *Sharon,* 175 Mass. 293. *Welch* v. *Haley,* 224 Mass. 261, 263. The title of the devisees accordingly was extinguished unless the estate was redeemed within two years from the date of sale, or relief within five years was sought in equity. Gen. Sts. c. 12, §§ 36, 42. *Weeks* v. *Grace,* 194 Mass. 296, 300. *Davis* v. *Allen,* 224 Mass. 551. *Holbrook* v. *Brown,* 214 Mass. 542.

While Charles did not hold in common with Diana, and owed no duty to her or to the remainderman to pay taxes, he had a legal interest in the land as tenant for life in expectancy which entitled him to redeem. *Rogers* v. *Rutter,* 11 Gray, 410. *Hurley* v. *Hurley,* 148 Mass. 444. *Stone* v. *Stone,* 163 Mass. 474. *Hillis* v. *O'Keefe,* 189 Mass. 139. *Rogers* v. *Lynn,* 200 Mass. 354. The title of the life tenants would not be destroyed until the period of redemption expired, and under the agreed statement of facts the deeds are incorporated by reference. If they are read especially as to the consideration named in each in connection with the facts, that his mother is given the use for life of all the testator's estate on condition that if the testator's sister desired "to live and and board with my wife during her life that my wife shall give her that support," and that no other home where these provisions could be carried out except the farm is shown, the presumption, which we find nothing in the record sufficient to overcome, is that Charles never intended to act adversely to his mother's interests, but redeemed for his own benefit. *Hurley* v. *Hurley,* 148 Mass. 444, 446. *Solis* v. *Williams,* 205 Mass. 350, 353. *Callihan* v. *Russell,* 66 W. Va. 524. It is unnecessary to decide whether upon redemption, and in what proportions, he could have enforced contribution from the other devisees.

And, the tax title never having matured, the devisees held their respective estates in accordance with the provisions of the will. *Langley* v. *Chapin,* 134 Mass. 82, 88, 89.

Nor has the defendant acquired any rights by prescription. The remainderman, the plaintiffs' only grantor with title, had no

right to possession until the death of his father, which occurred less than twenty years before the present suit was brought. *Mixter* v. *Woodcock*, 154 Mass. 535.

The defence of laches, although not pleaded, is also urged. The circumstances however are insufficient to justify the court on its own initiative to dismiss the bill. *Stewart* v. *Joyce*, 201 Mass. 301.

But, even if the bill can be maintained for injunctive relief under the first, second and third prayers, the plaintiffs, who had no exclusive ownership therein, cannot recover damages for the water taken by the defendant which are sought in the fourth prayer. The rights and duties of riparian owners on non-navigable streams having been fully discussed in *Elliot* v. *Fitchburg Railroad*, 10 Cush. 191, and in *Stratton* v. *Mount Hermon Boys' School*, 216 Mass. 83, 87, need not be restated.

The question, whether the defendant had so diverted the flow of the brook as to injure the plaintiffs in the exercise of their rights to the beneficial use of the stream and to have the water come to their land without any unreasonable diminution, was a question of fact. *Pratt* v. *Lamson*, 2 Allen, 275, 290. The diversion having been for a reasonable use leaving enough water for their needs, the master reports, that the plaintiffs offered no evidence of actual damages, and finds that they have suffered no actual damages. The finding is decisive not only of any claim that the defendant must pay for the water used after the plaintiffs became the owners at the same rates as the rates charged for water by the city where its mills are located, but of the right to more than nominal damages. *Elliot* v. *Fitchburg Railroad*, 10 Cush. 191. *Stratton* v. *Mount Hermon Boys' School*, 216 Mass. 83, 87. The case of *Bliss* v. *Rice*, 17 Pick. 23, relied on by the plaintiffs as permitting compensation based on the value of the use which the defendant made of the water, is not in point, as the plaintiff in that case had acquired the absolute right to the use of all the water. The distinction between such a right and the reasonable use of the water in common with other riparian proprietors, which is all that the plaintiffs at bar had, is fully considered in *Pratt* v. *Lamson*, 2 Allen, 275, 287, 288. The master's finding also disposes of any claim for actual damage for the maintenance of the pipe or disturbance of the soil which may be caused by its removal, but

nominal damages should be awarded for the invasion of the plaintiffs' right to undisturbed possession. *Appleton* v. *Fullerton,* 1 Gray, 186, 194. *Lund* v. *New Bedford,* 121 Mass. 286, 290.

The result is that the interlocutory decree denying the plaintiffs' petition for a rehearing and recommital of the report is affirmed, and the final decree in so far as the plaintiffs' exceptions are overruled and the report confirmed is also affirmed, but in all other respects it is reversed with costs.

*Ordered accordingly.*