## JUBILEE YACHT CLUB *vs.* GULF REFINING COMPANY.

Essex.     November 17, 1922. — May 23, 1923.

Present: RUGG, C.J., DeCOURCY, CROSBY, & CARROLL, JJ.

*Evidence,* Presumptions and burden of proof. *Sea Shore. Equity Jurisdiction,* To enjoin maintenance of wall on shore.

Presumptions both of law and of fact are in favor of regularity and of innocence. The owner of land on an arm of the sea cannot maintain a suit in equity against an adjoining shore owner to enjoin him from maintaining, on his land and along or near the boundary line separating it from that of the plaintiff, a high concrete wall extending across the beach and to a point between high and low water mark, if it does not appear that such maintenance is without requisite license from the appropriate public authorities or that any statutory provision relating to such a structure has been violated, although the maintenance of the structure results in a large amount of sand and soil from other beaches and flats being deposited on the land and beach of the plaintiff and in a channel leading to a wharf on the plaintiff's premises much used by him, and in the level of the plaintiff's land and beach being raised many feet, so that he is obliged to extend his wharf and to change runways and floats maintained by him and in other details has been caused great inconvenience in the use of his property, and although the defendant does not use the property bounded by that part of the wall which causes damage to the plaintiff and could use his property advantageously without that part of the wall.

BILL IN EQUITY, filed in the Superior Court on January 19, 1922, to abate an alleged nuisance caused to the plaintiff's property on Beverly Harbor by the erection and maintenance of a wall on the adjoining land and flats of the defendant and for resulting damages.

Material allegations in the bill are described in the opinion. The defendant demurred on the ground of want of equity. The demurrer was heard by *Lummus,* J., who ordered an interlocutory decree sustaining it, and, being of the opinion that the interlocutory order and decree so affected the merits of the controversy that, before further proceedings, the matter ought to be determined by this court, he reported the case for that purpose.

*G. C. Richards,* for the plaintiff.

*F. B. Greenhalge,* for the defendant.

RUGG, C.J.    This is a suit in equity whereby the plaintiff seeks injunctive relief for the abatement of an alleged nuisance and for damages.    The case comes before us on report from an order sustaining the defendant's demurrer on the ground of want of equity.    The averments of the bill must be accepted as true for the purposes of this decision.    They are in substance that the plaintiff is the owner of land bounded in part upon Beverly Harbor, an arm of the sea, including a sandy beach and flats to low water mark.    It has maintained for many years a club house and a bulkhead and a wharf or pier extending over its flats to a deep channel in the harbor, together with runway and floats, sheds and other appliances for the storage, anchorage, landing and embarking of yachts and other boats, all free from interference, obstruction, filling in or deposits of soil or other accumulations until the acts of the defendant now complained of.    The defendant is owner of an adjacent parcel of land with similar frontage on the harbor and beach to low water mark, used for receiving, unloading, storage, sale and shipment of petroleum products.    It has erected along or near the whole or a part of the boundary line between its land and that of the plaintiff, extending across the beach and to a point between high and low water mark, a high concrete and stone wall, whereby a large amount of sand and soil from other beaches and flats has been caused to be deposited on the land and beach of the plaintiff, and in the channel, and the level of the plaintiff's land and beach has been raised to a level many feet higher than theretofore, and it has been obliged to extend its wharf, or pier, and to change its runway and floats, and has been caused in other details great interference in the use of its property.    The defendant does not use its property bounded by that portion of its wall causing damage to the plaintiff, and could advantageously use its property without that portion of its wall.

There are no allegations to the effect that the defendant has not kept entirely within the limits of its own property in constructing the wall, or that the wall is maintained contrary to G. L. c. 91.    No intendment can be made in favor

of the bill in this respect. *Old Dominion Co.* v. *Commonwealth*, 237 Mass. 269, 274. It must be presumed also that whatever license from public authorities was necessary to validate the acts of the defendant has been granted, and that no public right is being violated. Presumptions both of law and of fact are in favor of regularity and of innocence. *Doherty* v. *Ayer*, 197 Mass. 241, 248. See in this connection *Whitcomb* v. *Vigeant*, 240 Mass. 359. There is no averment of malignity and spite on the part of the defendant in building the wall, so that factor, if indeed ever entitled to weight, may be laid on one side. *Taft* v. *Bridgeton Worsted Co.* 237 Mass. 385, 387, 388.

The single question is whether the defendant has violated any legal right of the plaintiff by thus building a wall on its own property which by its effect on the tide and currents of the sea flowing over its own land has injured the adjacent property of the plaintiff. Plainly, if these acts had been committed by the owner of adjoining property away from the seashore, no right of action would arise. The building of fences, walls or other structures, or making excavations on his own land ordinarily is within the absolute right of the owner of a fee without reference to the incidental injury which may thereby be caused to his neighbor. *Greenleaf* v. *Francis*, 18 Pick. 117. *Carson* v. *Western Railroad*, 8 Gray, 423. *Cassidy* v. *Old Colony Railroad*, 141 Mass. 174, 178, and cases there cited. *Rideout* v. *Knox*, 148 Mass. 368, 372. *Middlesex Co.* v. *McCue*, 149 Mass. 103. *Hyde* v. *Boston & Worcester Street Railway*, 194 Mass. 80. *McKeon* v. *New England Railroad*, 199 Mass. 292, 295. *Holbrook* v. *Morrison*, 214 Mass. 209.

The nature and extent of the ownership of proprietors of upland to the adjacent strip of land not exceeding one hundred rods in width between high and low water mark has been set forth in numerous decisions. It was said by Chief Justice Shaw in *Davidson* v. *Boston & Maine Railroad*, 3 Cush. 91, 105, 106, " the petitioners had no right, as riparian proprietors, to have their flats kept open and unobstructed for the purposes stated, [for the free flow and reflow of the tide water, for their mills or for navigation,]

. . . the petitioners, as tide mill owners, had no right, either as against the public or as against conterminous and adjacent proprietors, to have their flats kept open, but only to the flow of water in the channel below low water mark, and where the tide does not ebb. The adjoining proprietor, to the extent of one hundred rods, may build solid structures, and thus obstruct the flow and reflow of the tide, without objection, provided he does not wholly cut off his neighbor's access to his house or land; and if the mill owner or conterminous proprietor suffers in consequence, it is *damnum absque injuria.*"

In *Gray* v. *Bartlett*, 20 Pick. 186, at page 192, occur these words referring to the right of a littoral owner: "he had a right to use and occupy his own flats to the full breadth, in any manner which he saw fit." In the note to *Commonwealth* v. *Roxbury*, 9 Gray, 451, at page 520, is found the statement that "The owner of flats has no right, either against the Commonwealth or against conterminous proprietors, to have his flats kept open for the ebb and flow of the tide, either for tide mills or for navigation; but only to the flow of the water below low water mark, and to some access thereto." In *Commonwealth* v. *Alger*, 7 Cush. 53, at page 79, it was asserted to have been the constant view of the courts as to the colony ordinance, "That it vested the property of the flats in the owner of the upland in fee, in the nature of a grant; but that it was to be held subject to a general right of the public for navigation until built upon or inclosed, and subject also to the reservation that it should not be built upon or inclosed in such manner as to impede the public right of way over it for boats and vessels." See also at pages 102, 103. With respect to the nature of title to flats the court held, in *Butler* v. *Attorney General*, 195 Mass. 79, 83, speaking through Chief Justice Knowlton, that "Except as against public rights, which are protected for the benefit of the people, the private ownership is made perfect." In *Henry* v. *Newburyport*, 149 Mass. 582, at page 585, the effect of the colony ordinance of 1641–47 was declared to be to secure to the owner of the upland adjacent to the sea in the space between high and low water mark

not exceeding one hundred rods in width, " not merely an easement, but a property in the land in fee, with full power to reclaim the flats by building wharves, or enclosing them, so as to exclude navigation, provided he did not cut off his neighbor's access to their houses or lands. He could erect wharves or other structures thereon, could fill up the same, and plant stakes thereon, even to the obstruction of the public right of fishing."

These excerpts from opinions by judges of the highest eminence are decisive against the contentions of the plaintiff upon the present record. The defendant has not turned any filth or other deleterious matter from its own property upon land of the plaintiff. It has merely exercised the ordinary rights of an owner in fee. The plaintiff stands no better than one whose well has been drained, whose view has been cut off or whose light and air have been interfered with by constructions on his neighbor's land.

All rights of owners of flats between high and low water mark under the colony ordinance are subject to very extensive regulation by the General Court. *Home for Aged Women* v. *Commonwealth*, 202 Mass. 422. *Crocker* v. *Champlin*, 202 Mass. 437. *Butchers Slaughtering & Melting Association* v. *Boston*, 214 Mass. 254. The Legislature has made full provision respecting such structures as here are in question between high and low water mark. G. L. c. 91. The plaintiff cannot rely upon any violation of these statutes without specific averments to that end.

*Decree sustaining demurrer affirmed.*