ANNA KUKLINSKA *vs.* MAPLEWOOD HOMES, INC.

Middlesex. October 9, 1957. — December 11, 1957.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Water. Drain. Real Property,* Water, Drain. *Evidence,* Relevancy and
materiality; Opinion: expert.

A plaintiff landowner, onto whose land water had always run from one
of two connected swamps on the defendant's adjoining land into
which water had drained from the higher portions of his land, had no
ground of complaint against the defendant when, in developing his
land for residential use, he cut down the higher portions of his land,
filled and levelled large portions of the swamps, and installed a drain-
age system whereby surface water was collected on his land, carried
through a pipe line, and discharged on his land at a point whence it
seeped onto the plaintiff's land near by, where it appeared that such
changes made by the defendant did not increase the flow of water onto
the plaintiff's land. [492–493]
Where a flow of water originating in a swamp and passing through a cul-
vert into a swamp on a defendant's land and thence through an ancient
ditch and another swamp on his land to the plaintiff's land constituted
at least a seasonal watercourse, the defendant was entitled, as against
the plaintiff, to fill the swamps on his land and carry the water across
his land in a drain pipe discharging thereon near the plaintiff's land
so long as the flow as it left the defendant's land was not materially
altered and no harm was done the plaintiff by the change. [493–495]
In a suit in equity involving the effect of changes made by the defendant
in his land on a flow of water therefrom onto the plaintiff's land, there
was no error in admitting certain evidence respecting the general area
in which the parties' lands were located as relevant to whether such
flow was affected by causes other than the defendant's changes. [495]
There was no impropriety in permitting an expert witness testifying in
a suit involving waters in a certain area to use a map of the area to
supplement and refresh his recollection of his own observations of the
area although he had not prepared the map himself and it was not
introduced in evidence. [495]

BILL IN EQUITY, filed in the Superior Court on October 27,
1954.

The suit was heard by *Sullivan, J.*

In this court the case was submitted on briefs.

*Anna Kuklinska,* pro se.

*George P. Lordan,* for the defendant.

CUTTER, J. By this bill in equity the plaintiff seeks to enjoin the construction and maintenance upon the defendant's land of certain drains in such a manner as to cause water to flow to the plaintiff's land and upon a right of way alleged to be appurtenant thereto. The trial judge made findings of fact and ordered that the bill be dismissed. The plaintiff appeals from the final decree dismissing the bill. The evidence is reported.

From the trial judge's findings the following facts appear. The defendant owned a large tract of land in Wakefield, which it has developed (as the evidence shows, beginning in 1954) by grading "practically the whole area" and by suitable roads for residential purposes in accordance with a plan introduced in evidence. Some houses have been built and house lots have been laid out.

On land north of the defendant's property is a substantial swamp (hereinafter called Swamp No. 1) with an outlet through a culvert under an abandoned railroad bed into "what was formerly a substantial swamp" (hereinafter called Swamp No. 2) on the northerly part of the defendant's land. Prior to the development of the land, a ditch or channel (hereinafter called Ditch A and shown by the evidence to be about one hundred fifty feet long and eight feet deep in places) ran in a southwesterly direction into a large swamp meadow (hereinafter called Swamp No. 3) which in turn "ran directly to the property of" one Nellie Baker and to that of the plaintiff. Swamp No. 3.(which was mostly on the defendant's land but partly on the lands of the plaintiff and Baker) was "constantly fed by nature from the slopes surrounding it on both sides." Ditch A has "been in existence within the memory of man." The Baker land as it adjoins the land of the defendant "is low, swampy land and . . . is fed . . . by a natural drainage from . . . upland . . . north of the Baker property [shown by the plans not to be land of the defendant], and

[this drainage] adds to the accumulation of water that ultimately reaches the" plaintiff's land. This "condition of swamp and drainage has existed for many, many years. . . . [T]here runs through the Baker and . . . [the plaintiff's] property a well defined brook which empties into the swamp land of both Baker and" the plaintiff. The "water accumulation from the Baker land and the . . . land" of the plaintiff "ultimately seeks its course into the Saugus River."

The "defendant materially changed the grade, substantially reduced the slopes and lessened by such change the natural drainage from the high ground into the swamp land," by which the trial judge apparently means Swamp No. 3 and (construing the finding in the light of the evidence) also Swamp No. 2. The defendant also "installed pipes and drains collecting such waters as formerly drained into the swamp" area "into a pipe line which emptied into . . . Lot 36 on the premises of the defendant and ultimately seeped onto" the Baker land and then onto the plaintiff's land. Lot 36 is shown by the plans to be a small lot, containing about 2,152 square feet, at the westerly side of the defendant's land where it adjoins the Baker land and within the area of Swamp No. 3. The plaintiff's land is south of the Baker land and, in general, is west and southwest of the defendant's land.

The trial judge concluded "that the changing of the grades by the defendant in fact reduced the flow of water onto the Baker land and consequently reduced the flow onto the plaintiff's land" and "that nothing that the defendant has done or plans to do relative to . . . [its] development in any way increases materially the flow of water onto the land of the plaintiff."

In considering the record, we have in mind that the trial judge had the advantage of hearing the several experts give their testimony. He also took a view of the properties and examined, during the trial, various photographs not introduced in evidence. He was thus in a better position to appraise the evidence than we are.

It appears (and could be found) from some of the evidence

that large portions of Swamp No. 2 and Swamp No. 3 were filled in by the defendant and leveled; that absorbent peat was removed from one or both of the swamps and replaced by various types of fill; that the surface of higher parts of the defendant's land was lowered and flattened; that various dry wells were constructed or to be constructed; that parts of the land have been or will be grown to grass; that some of the changes just mentioned would tend to reduce surface water run-off and to increase and accelerate surface water absorption; that the discharge on Lot 36 of water from the new pipe through Swamp No. 3 was at a point at the same natural level as the ground in the part of Swamp No. 3 over which water formerly passed to the Baker land and at a point about forty feet inside the defendant's property line; that Ditch A was, or was to be, filled in and replaced by a portion of a long concrete pipe or drain with open joints, as a part of the new system of drains; that Swamp No. 1 was fed by rainfall and possibly also by springs; and that water from Swamp No. 1, which formerly would have passed through Swamp No. 2 and Swamp No. 3 in the open (thus subject to evaporation and some tendency to percolate into the ground), will hereafter move through the new concrete drain system.

There was conflicting and confusing testimony of experts with respect to the issue whether the drainage system and the various changes in the defendant's land in net effect will increase the flow of water at the discharge point of the new system of drains on Lot 36. However, the preponderance of the evidence indicates no increase in this flow. We necessarily give weight to the findings of the trial judge that there will be no increase and see no occasion to disturb those or his other findings.

1. A landowner is permitted to improve his land by changes of grade, even if the natural course of surface water is thereby changed on the landowner's land, so long as the water is not discharged on the land of another, as a consequence of a definite, artificial channel, directly or by seepage. *Gannon* v. *Hargadon,* 10 Allen, 106, 109–110. *Maddock*

v. *Springfield,* 281 Mass. 103, 104–105. *Deyo* v. *Athol Housing Authority,* 335 Mass. 459, 462–463. *Miller* v. *Darby, ante,* 243, 246. See *Harrison* v. *Poli-New England Theatres, Inc.* 304 Mass. 123, 124–125; Am. Law of Property, § 28.63. Compare *Manning* v. *Woodlawn Cemetery Corp.* 245 Mass. 250. The findings of the trial judge, already discussed, make plain that no increase in the flow of water from the defendant's land to the plaintiff's land is attributable to the defendant's acts and also that there is no direct discharge by artificial means upon the land of the plaintiff. The new drains end on "Lot 36 on the premises of the defendant." The plaintiff thus has no basis of complaint about the defendant's development so far as concerns any change in the flow of surface water.

2. Here, however, we are dealing not only with surface water, but also with a flow of water which for many years has come, at some seasons at least, in part from Swamp No. 1, north of the defendant's land, through the railroad culvert (probably a substitute in the distant past for a natural outlet) to Swamp No. 2, and thence through Ditch A to Swamp No. 3 which extends to the Baker land and the plaintiff's property. This flow obviously has constituted far "more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes." Compare *Luther* v. *Winnisimmet Co.* 9 Cush. 171, 174–175. To the extent at least of the flow originating in Swamp No. 1, the whole system of flow long years ago seems to have become, for all practical purposes, at least a seasonal watercourse over the years. See *Stimson* v. *Brookline,* 197 Mass. 568, 572; *Yaskill* v. *Thibault,* 273 Mass. 266, 268–269; Am. Law of Property, § 28.61. See also a somewhat similar situation discussed in *DiNardo* v. *Dovidio,* 312 Mass. 398, 402 et seq. Compare *Stanchfield* v. *Newton,* 142 Mass. 110, 116.

There was testimony that Ditch A had been in existence for one hundred fifty years. Although Ditch A originally was probably partly artificial, it has certainly constituted for a long period a part of a continuous system for draining

the area. On this issue of fact (see *Stimson* v. *Brookline,* 197 Mass. 568, 570–573), we think that the system most reasonably is to be treated as a watercourse and that the defendant and the owners to the north are entitled to have water (not substantially in excess of that observed prior to 1954) continue to flow from Swamp No. 1 to the Saugus River.

It may be that, at one time, the predecessors in title of Baker and the plaintiff might successfully have objected to the maintenance of Ditch A on the defendant's land on the ground that it was an artificial channel which fed into a swamp meadow (Swamp No. 3), partly on the plaintiff's land, water which would not otherwise have been delivered there. Even if this was once the case (compare *Cassidy* v. *Old Colony Railroad*, 141 Mass. 174, 179), the finding of the trial judge as to the long existence of Ditch A imports that he inferred (and we think reasonably) either a prescriptive right, or a right now based upon the existence of what has become a watercourse, to have substantially the same flow continue. See *Miller* v. *Darby, ante,* 243, 245.

The defendant was not precluded from filling Swamp No. 2 and Swamp No. 3, in whole or in part, and putting in a covered channel or a concrete pipe the water which formerly moved through these swamps and Ditch A, so long as the flow, as it left the defendant's land, was not substantially altered (see *Mannville Co.* v. *Worcester*, 138 Mass. 89, 91–92; *New England Cotton Yarn Co.* v. *Laurel Lake Mills*, 190 Mass. 48, 51–52; Tiffany, Real Property [3d ed.] § 728; and cases collected in 56 Am. Jur., Waters, § 14) and so long as (which, on the present record, is the case here) no other special damage attributable to the change was caused to Baker and the plaintiff. Compare *Belcastro* v. *Norris*, 261 Mass. 174 (where flow of water delivered to the plaintiff's land was increased); *Yaskill* v. *Thibault*, 273 Mass. 266, 267, 269 (where obstruction in fact caused backing up of water); *DiNardo* v. *Dovidio*, 312 Mass. 398, 401 (where relief was given for obstruction of a watercourse which sub-

stantially affected stream flow). Compare also *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 298–300 (where the volume of water permitted under a prescriptive right was increased). If the transfer of the flow (while on the defendant's land) from Swamp No. 2, Swamp No. 3, and Ditch A to the concrete pipe constituted a diversion of the flow, it was reasonable, as is indicated by the trial judge's finding, and caused the plaintiff no harm. See *Stratton* v. *Mount Hermon Boys' School*, 216 Mass. 83, 87–88; *Isbell* v. *Greylock Mills*, 231 Mass. 233, 236; *Amory* v. *Commonwealth*, 321 Mass. 240, 246. We see no basis for injunctive relief against the defendant. See *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 293–294 (action as to the three defendants there mentioned). There is here no basis for assessment of damages since no increase in the flow of water from the defendant's land has been shown.

3. The trial judge admitted, over the plaintiff's objection, evidence with respect to (a) a culvert to the west of the defendant's land and (b) the conditions of general dampness, and the contours, of land outside the land of the parties but in the same watershed as Lot 36. As the trial judge indicated, this was generally relevant to whether the water which came to the plaintiff's land was affected or increased by other causes than the acts of the defendant.

The plaintiff objected to the use by an expert witness of a United States Geological Survey map (see U. S. C. [1952 ed.] Title 43, § 31 et seq.) of the area which was not introduced in evidence. The map itself may well have been admissible under the views stated in *Clark* v. *Hull*, 184 Mass. 164, 167–168. That, however, is a question we need not decide, since the record shows that the witness used the map essentially only to refresh his recollection of, and to supplement, his own visual observations made during a visit to the watershed. This was not improper, even though the witness had not prepared the map himself. The testimony which he gave purported to be an expression only of his own opinion which was admissible because it was given value by the sanction of his general experience. See *Finne-*

*gan* v. *Fall River Gas Works Co.* 159 Mass. 311, 312–313; *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257, 261; *Commonwealth* v. *Coshnear,* 289 Mass. 516, 526–527; *Davenport* v. *Haskell,* 293 Mass. 454, 458–459; *Gordon* v. *Medford,* 331 Mass. 119, 124. See also *Turcotte* v. *DeWitt,* 332 Mass. 160, 163–164. Compare *State Tax Commission* v. *Assessors of Springfield,* 331 Mass. 677, 684–685. It was open, of course, to the plaintiff to bring out, as bearing on the weight to be given to the expert's opinion, the extent to which the witness relied on maps and other data not prepared by him, or checked by him in detail. This is not a case where the testimony of the expert was shown to have been based on incorrect standards or principles or upon reasons which are legally incompetent. Compare discussion in *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 578–579.

The trial judge acted within a sound discretion in permitting an obviously qualified expert to express his opinion about the effect of the defendant's development upon the flow of water from the defendant's land to the land of Baker and the plaintiff. The discussion of this testimony in the plaintiff's brief goes only to the weight of the testimony and does not show that its exclusion was required.

4. There is no merit to the plaintiff's contention that the defendant's substitute answer did not adequately state the facts which the defendant proposed to prove in its defence to the bill. Examination of the answer (especially paragraph 4) shows that the essential facts shown in testimony and found by the trial judge were there set forth.

5. No question with respect to the plaintiff's petition to have the defendant adjudged in contempt (for alleged violation of the terms of a temporary injunction) is properly presented by this appeal. This petition need not be discussed.

*Decree affirmed.*