JOHN M. LUMMIS, JR. *vs.* JOSIAH K. LILLY, THIRD,
& another.[1]

Barnstable.  September 18, 1981. — January 12, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Water.  Real Property,* Water, Littoral property.  *Seashore.*

This court will apply the rule of "reasonable use" in adjudicating the rights
of owners of oceanfront property.  [43-46]

Discussion of factors relevant to a determination whether defendants'
maintenance of a stone groin on their oceanfront property, which
almost adjoins the plaintiff's littoral property, constituted a "reasona-
ble use."  [46-47]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 13, 1980.

The case was heard by *Mone,* J., on a motion for sum-
mary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*Donald L. Connors (Laura J. Goldin* with him) for the
plaintiff.

*Thomas D. Burns (Catherine A. White* with him) for the
defendants.

*Francis X. Bellotti,* Attorney General, *Stephen M.
Leonard & Maxine I. Lipeles,* Assistant Attorneys General,
for the Commonwealth, amicus curiae, submitted a brief.

NOLAN, J.  The defendants filed a motion to dismiss or for
summary judgment in answer to a complaint in three counts
alleging nuisance, unreasonable use, and unjust enrich-
ment, resulting from the defendants' installation and main-
tenance of a stone groin on their Cape Cod waterfront prop-

---

[1] Josephine M. Lilly.

erty, which almost adjoins the plaintiff's littoral property. Treating it as a motion for summary judgment, the trial judge ordered judgment for the defendants. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). We granted the plaintiff's application for direct appellate review pursuant to G. L. c. 211A, § 10, and Mass. R. A. P. 11 (a), as appearing in 378 Mass. 924 (1979). We reverse and remand for the reasons which follow.

From the record we learn that the defendants have owned their property since at least 1965. The defendant Josiah K. Lilly owned the property (Lilly property) until 1979 when he conveyed it to his wife, Josephine M. Lilly. The plaintiff purchased his property (Lummis property) in 1975. An engineer's plan of the area reveals that both properties are on that part of the shore of Buzzards Bay in Cape Cod known as Sippewisset Beach and that they are almost contiguous. In 1966, Josiah Lilly applied to the Massachusetts Department of Public Works for a license "to build and maintain a stone groin." The license was granted under the following terms and conditions: "A stone groin may be built extending into tidewater a distance of 105 feet from the mean high water line with a top width of 5 feet, and side and end slopes at 1½ to 1, in the location shown on said plan with the center line 25 feet from the licensee's northerly property line, and in accordance with the details there indicated. Said groin shall be built with its top elevation at 6.5 feet above mean low water at the mean high water line and sloping to the elevation of mean high water, amounting to 3.5 feet above mean low water at the outer end, as shown on said plan. A beacon stone shall be installed at the outer end of said groin, as indicated on said plan. Nothing in this license shall be construed as authorizing encroachment on property not owned or controlled by the licensee except with the consent of the owner or owners thereof. This license is granted subject to all applicable Federal, State, County and Municipal laws, ordinances and regulations." Lilly also received a permit from the United States Army Engineer Division "to construct and maintain a stone groin

and place riprap" on his property, under conditions which do not require recital because they are not material to this case.  A groin was then built.

A groin was defined in one expert's affidavit as "a solid structure which lies generally perpendicular to the shoreline and extends from the backshore out across the foreshore of the beach. The function of a groin is to interrupt the littoral drifting of sand along the shore, thereby producing deposition of sand on the updrift side of the structure and widening the beach." According to the same expert the "[l]ittoral drifting continues on the downdrift side of the structure and since the sand which is transported away is not replaced by sand from the updrift side, the beach narrows on the downdrift side of the groin." The Lummis property is on the downdrift side and these conditions, as they affect the Lummis property, are precisely the damage alleged by the plaintiff.

The narrow but important issue is whether we should apply the rule of "reasonable use" as most recently enunciated by this court in *Tucker* v. *Badoian*, 376 Mass. 907 (1978), to the rights of owners of oceanfront property.

In *Tucker*, the court rejected, as to the problems of surface water, the standard which came to be known as the "common enemy" rule. It had been formulated (though not so named) in the early case of *Gannon* v. *Hargadon*, 10 Allen 106 (1865), though, even earlier, in *Luther* v. *Winnisimmet Co.*, 9 Cush. 171 (1851), the court had approved jury instructions which embraced the principles of the rule. The common enemy rule was expressed in *Gannon, supra* at 109, as follows: "The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface or flowing on to it over the surface of adjacent lots, either to stand in unusual quantities

on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow." The rights of private landowners with respect to surface waters were governed by the common enemy rule from the time of *Gannon* to *Tucker*. See *Maddock* v. *Springfield*, 281 Mass. 103, 104-105 (1932); *Kuklinska* v. *Maplewood Homes, Inc.*, 336 Mass. 489, 492 (1957); *Canavan & Manning, Inc.* v. *Freedman*, 353 Mass. 762 (1968). The pristine harshness of the common enemy rule was soon relaxed to impose liability on a landowner who used artificial contrivances to cause surface waters to accumulate or to flow onto neighboring land in unreasonable quantities. See *Tucker, supra* at 913, and cases collected there.

The common enemy rule has never been successfully invoked in decisions adjudicating the rights of riparian landowners. From earliest times, these rights have been enforced under the standard of reasonable use. See *Newhall* v. *Ireson*, 8 Cush. 595 (1851); *Whitney* v. *Wheeler Cotton Mills*, 151 Mass. 396 (1890); *Isbell* v. *Greylock Mills*, 231 Mass. 233 (1918); *Lincoln Park Amusement Co.* v. *Westport*, 339 Mass. 334 (1959). In *Stratton* v. *Mount Hermon Boys' School*, 216 Mass. 83, 85 (1913), the "reasonable use" rule was articulated as follows: "[E]ach riparian owner must conduct his operations reasonably in view of like rights and obligations in the owners above and below him. The right of no one is absolute but is qualified by the existence of the same right in all others similarly situated. The use of the water flowing in a stream is common to all riparian owners and each must exercise this common right so as not essentially to interfere with an equally beneficial enjoyment of the common right by his fellow riparian owners. Such use may result in some diminution, obstruction or change in the natural flow of the stream, but the interference cannot exceed that which arises from reasonable conduct in the light of all circumstances, having due regard to the exercise of the common right by other riparian owners." Support for this

rule as applied to riparian owners can be found in Restatement (Second) of Torts § 850 (1979).

Our jurisprudence on the rule governing littoral rights is not abundant. Some cases are inapposite because they address the question of public against private rights. See *Gray v. Bartlett*, 20 Pick. 186 (1838); *Commonwealth* v. *Alger*, 7 Cush. 53 (1851); *Commonwealth* v. *Roxbury*, 9 Gray 451 (1857); *Henry* v. *Newburyport*, 149 Mass. 582 (1889); *Butler* v. *Attorney Gen.*, 195 Mass. 79 (1907); *Michaelson* v. *Silver Beach Improvement Ass'n*, 342 Mass. 251 (1961); *Opinion of the Justices*, 365 Mass. 681 (1974); *Boston Waterfront Dev. Corp* v. *Commonwealth*, 378 Mass. 629 (1979); *Opinion of the Justices*, 383 Mass. 895 (1981). In *Davidson v. Boston & Me. R.R.*, 3 Cush. 91 (1849), the court spoke to the rights of littoral owners, but within the context of a taking which interfered with the public interest in navigation and not with the plaintiff's private rights. The following language from *Commonwealth* v. *Alger*, 7 Cush. 53, 86-87 (1851), comes closer to the mark: "[A]ll real estate, inland or on the sea-shore, derived immediately or remotely from the government of the state, is taken and held under the tacit understanding that the owner shall so deal with it as not to cause injury to others; . . . when land is so situated, or such is its conformation, that it forms a natural barrier to rivers or tidal watercourses, the owner cannot justifiably remove it, to such an extent as to . . . destroy the valuable rights of other proprietors, both in the navigation of the stream, and in the contiguous lands. . . . [T]he object [of the colonial ordinance] seems to have been, to secure to riparian proprietors in general, without special grant, a property in the land, with full power to erect such wharves, embankments and warehouses thereon, as would be usually required for purposes of commerce, *subordinate only to a reasonable use of the same, by other individual riparian proprietors and the public*, for the purposes of navigation, through any sea, creeks or coves, with their boats and vessels" (emphasis supplied). *Id.* at 89.

A more recent case to address the problem directly is *Jubilee Yacht Club* v. *Gulf Ref. Co.*, 245 Mass. 60 (1923), in which the plaintiff sought damages and injunctive relief because of the defendant's construction of a breakwater. The defendant in the present action relies heavily on *Jubilee*, in which the court denied the plaintiff relief because the defendant "merely exercised the ordinary rights of an owner in fee." *Id.* at 64. There, the court analogized the defendant's construction of the concrete breakwater to "acts . . . committed by the owner of adjoining property away from the seashore . . . . The building of fences, walls or other structures, or making excavations on his own land ordinarily is within the absolute right of the owner of a fee without reference to the incidental injury which may thereby be caused to his neighbor." *Id.* at 62.

To the extent that the *Jubilee* decision approved of a rule applicable to littoral owners other than that of reasonable use we choose not to follow it. There is no sound reason for imposing the obligation of reasonable use on riparian owners, while permitting littoral owners to use their property without any limitations. See *Mears* v. *Dole*, 135 Mass. 508, 510 (1883).

1. *Reasonable use.* On remand, the trial judge will be faced with weighing the evidence to resolve whether the defendants have made a reasonable use of their property as that use affects the plaintiff's property. There are several factors which the judge may consider in determining whether the maintenance of the stone groin in its present form constitutes a reasonable use. Factors considered relevant to reasonable use by riparian owners can be considered in evaluating the same question when applied to littoral owners.

Among those factors are the license which the defendant secured and whether the conditions of the license have been met. Neither the license from the Department of Public Works nor the permit from the United States Army Engineer Division is conclusive on the issue of reasonable use. It is settled that a license does not immunize the licensee from liability for negligence or nuisance which flows from the

licensed activity. See *Ferriter* v. *Herlihy*, 287 Mass. 138, 143 (1934); *Hub Theatres, Inc.* v. *Massachusetts Port Auth.*, 370 Mass. 153, 156, appeal dismissed, 429 U.S. 891 (1976).

Other factors bearing on the reasonableness of the use are the purpose of the use, the suitability of the use to the water course, the economic value of the use, the social value of the use, the extent and amount of harm it causes, the practicality of avoiding the harm by adjusting the use or method of use of one owner or the other, the practicality of adjusting the quantity of water used by each owner, the protection of existing values of water uses, land, investments, and enterprise, and the justice of requiring the user who is causing harm to bear the loss. Restatement (Second) of Torts § 805A (1979). See *Stratton* v. *Mount Hermon Boys' School*, 216 Mass. 83, 85 (1913).

2. *Nature of relief.* This case was decided by entry of summary judgment for the defendants. As a result, the judge did not consider the issue of the relief, if any, to which the plaintiff would be entitled. We need not reach this issue. At a minimum, the plaintiff might be entitled to equitable relief from prospective injury, if an unreasonable use of the groin is found. In such case, equitable relief in the form of an injunction or an order to reduce the size of the groin or to modify its shape may be in order.

As to relief for damages sustained prior to the entry of judgment, it appears that the plaintiff's claim is founded more nearly on longstanding principles enunciated in connection with the rights of riparian owners than on principles similar to the rights of landowners concerned with surface water, recently announced prospectively in *Tucker* v. *Badoian, supra.* Cf. *Stratton, supra* at 89; *Parker* v. *American Woolen Co.*, 215 Mass. 176, 182 (1913). On this record, we cannot determine what, if any, damages may be recoverable by the plaintiff.

The judgment dismissing the plaintiff's complaint is reversed and the case is remanded to the Superior Court for action consistent with this opinion.

*So ordered.*