JAMES B. LAWRIE ET AL. *v.* W. H. SILSBY ET AL.

October Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed, October 25, 1909.

*Findings of Master—Conclusiveness—Waters and Water Courses —Rights of Riparian Owners—Reasonable Use—Non-riparian User—"Natural Want."*

A master's finding, which he states is predicated on certain facts recited in his report, must stand if the reported facts are together pertinent to that inquiry; but if such facts, or any of them, are not so pertinent, the finding cannot stand, for in reaching his conclusion he may have most relied on the impertinent fact or facts.

In determining whether an upper riparian proprietor's use of a steam is reasonable, the size and character of the steam and the use to which it is subservient are pertinent.

A master's finding, on which he predicates his conclusion that an upper proprietor's use of a stream is unreasonable, that the stream is so small as in certain seasons of the year to be barely sufficient to supply the "natural wants" of the users thereof, means that the stream is so small that at times it furnished barely enough water to supply the domestic uses of lower proprietors; the term "natural wants" denoting domestic uses.

In determining whether an upper proprietor's use of the water of a stream across which he maintains a dam is reasonable, the increased evaporation caused by impounding the water for an artificial use is a pertinent fact, which in connection with the size of the stream may be controlling.

The fact that the maintenance of a dam across a stream by an upper proprietor has increased the number and extent of the occasions that the water did not form a channel through the land of the lower proprietor is important in determining the reasonableness of the use made by the upper proprietor.

The rights of upper and lower riparian proprietors are reciprocal, and each owes the other the duty of so exercising his rights as to keep within the bounds of a reasonable use of the water, and beyond that limit he may not go without incurring liability to a lower proprietor and being without remedy against an upper proprietor for the latter's impairment of such unreasonable use.

A riparian owner may convey his right to a reasonable use of the water of the stream, but the right to a more extensive use thereof he cannot convey, for he has it not.

The fact that the water from a stream is used on nonriparian lands does not, *per se*, make such use unreasonable, but that fact, together with the size and character of the stream, the quantity of water appropriated, and all the circumstances, may make such use unreasonable.

The mere fact that an upper riparian proprietor reduces the natural flow of the stream is not decisive of his liability to a lower riparian proprietor, but to entitle the latter to relief he must show that the act complained of works an injury to such use of the water as legally belongs to him.

APPEAL IN CHANCERY. Heard on master's supplemental report, and exceptions thereto, at the September Term, 1905, Washington County, *Powers,* Chancellor. Decree strictly *pro forma,* overruling the exceptions, and perpetually restraining

the defendants from maintaining a dam across the stream in question so as either to obstruct the natural flow of water, or to pollute the same. The defendants appealed. This case has been once before in the Supreme Court; see 76 Vt. 240.

*Smith & Smith* for the orators.

"Any diversion or obstruction of the water which substantially diminishes the volume of the stream, so that it does not flow as it naturally runs, or which defiles and corrupts it to such a degree as essentially to impair its purity and prevent the use of it for any of the reasonable and proper purposes to which running water is usually applied, such as irrigation, the propulsion of machinery or consumption for domestic use, is an infringement of the right of other owners of land through which a water-course runs, and creates a nuisance for which those thereby injured are entitled to remedy. *Merrifield* v. *Lombard*, 13 Allen 16; *People* v. *Hulbert*, 64 L. R. A. 265; *Woods et al.* v. *Edes*, 2 Allen 578; *Lyon* v. *McLoughlin*, 32 Vt. 425; *Woolen Co.* v. *Newton*, 57 Vt. 468; *Ware* v. *Allen*, 140 Mass. 513.

*Dunnett & Slack* and *R. M. Harvey* for the defendants.

The rights of the orators would be precisely the same in this water if they made no use of it whatever. *Crooker* v. *Bragg*, 10 Wend. 260, 25 Am. Dec. 557; *Adams* v. *Barney et al.*, 25 Vt. 231. The use of the water made by the orators is not only not a reasonable use, it is not even a use, but a diversion. If it is a reasonable use of a stream to divert the water and make merchandise of it, then the defendants can sell it all on their premises. *Phil. R. R. Co.* v. *Pottsville Water Co.*, 38 Atl. 405. "The question of reasonable use is generally a question of fact; but whether the undisputed facts and the necessary inferences therefrom establish an unreasonable use is a question of law." *People* v. *Hurlbut*, 131 Mich. 156, 64 L. R. A. 271; *Gehlen* v. *Knorr*, 63 Am. St. Rep. 416.

Evaporation caused by ponding water is a necessary result of a reasonable use thereof. *Palmer* v. *Mulligan*, 2 Am. Dec. 270. This case holds that the right of a riparian owner to use water flowing in a natural stream through his land is not an

easement or appurtenance, but is annexed to the soil, and is parcel of the land. For such proprietor has an equal right to the use of the water for every useful purpose to which it can be applied, but in such a manner as not unnecessarily to injure the rights of others. *Twiss* .v. *Baldwin,* 9 Conn. 291; *Williams* v. *Wadsworth,* 51 Conn. 271; *Mfg. Co.* v. *Union Mfg. Co.,* 39 Conn. 576; *Anthony* v. *Lapham,* 5 Pick. 175; *Western* v. *Alden,* 8 Mass. 136; *Plumleigh* v. *Dawson,* 41 Am. Dec. 199; *City of Springfield* v. *Harris,* 4 Allen 494; *Hoy* v. *Sterrell,* 27 Am. Dec. 313; *Wheeler* v. *Ahi,* 29 Pa. St. 101; *Platt* v. *Johnson,* 8 Am. Dec. 233; *Stein* v. *Burden,* 60 Am. Dec. 453; *Evans* v. *Merriweather,* 38 Am. Dec. 106; *Ulbricht* v. *Eufaula Water Co.,* 4 L. R. A. 572; *Gardner* v. *Newburg,* 7 Am. Dec. 526; *Davis* v. *Getchell,* 77 Am. Dec. 50; *Lord* v. *Water Co.,* 135 Pa. St. 122, 19 Atl. 1007; *Clark* v. *Railroad Co.,* 145 Pa. St. 438, 22 Atl. 989; *Merritt* v. *Brinkerholl,* 8 Am. Dec. 404; *Spencer* v. *McDonough,* 77 Iowa 46; *Strobel et al.* v. *Kerr Salt Co.,* 164 N. Y. 303; *Pierson et al.* v. *Speyer,* 178 N. Y. 270.

Powers, J. It having been held that the orators could maintain this bill if the defendants had infringed their rights by an unreasonable use of the water of the stream, and that the question of reasonable use was one of fact. *Lawrie et al.* v. *Silsby et al.,* 76 Vt. 240, 56 Atl. 1106, 104 Am. St. Rep. 927,—the cause was remanded with a mandate to the court of chancery to recommit the report to the master "to find and report whether the defendants' use of the water is a reasonable use; and if not, in what respects it is unreasonable, and whether such use can be remedied in any and what way. Also to find and report whether the water in the pond has improved in quality to any and what extent since the last hearing before the master, and what the prospect is of its ultimate purification and when; and whether the orators have sustained any and how much damage since said hearing."

Pursuant to this mandate, a further hearing has been had before the master, and a supplemental report filed, to which the defendants filed exceptions. Thereupon, a *pro forma* decree was made overruling the exceptions to the report, granting a perpetual injunction against maintaining any dam across the stream in question which should prevent the natural flow of the water

through the orators' aqueduct or contaminate it, and awarding the orators damages. From this decree the defendants appeal.

In the supplemental report it is found that the defendants' use of the water is unreasonable. The finding, the master states, is predicated upon certain facts set forth in the report and by the master designated a, b, c and d. The further paragraphs of the report are designated e, f and g, but it is plain that they were not intended to be statements of fact on which the main finding was based, but statements of further facts called for by the mandate or requested by counsel, and they are mainly important in the consideration of the main finding by showing that the master had in mind the facts therein recited.

Under the exceptions to the report, it is urged by the defendants that the finding on the question of reasonable use cannot stand because some or all of the specified facts on which it is based do not support it. This depends upon whether the facts referred to are pertinent to the enquiry. If they are, we cannot disturb the finding. If they or any of them are not, the finding cannot stand, for the master may have most relied upon the impertinent fact or facts in reaching his conclusion. But it is not necessary that each of these facts, standing alone, should be sufficient to support the finding of unreasonable use. It is enough if each is pertinent, and all, sufficient.

"(a) The stream is so small that the amount of water flowing in it during certain seasons of the year is barely sufficient, under the best conditions, to supply the natural wants of the users thereof as described in the original report."

The master evidently uses the term "natural wants" understandingly;—uses it to designate those commonly spoken of as "domestic," which include those necessary to the support of the riparian proprietor, his family and his beasts. This is the language of the books. It is the language of this Court in disposing of this case when it was here before. 76 Vt. at p. 252, 56 Atl. 1106, 104 Am. St. Rep. 927. But the defendants say that these natural wants must yield to the reasonable use of the upper proprietors. Perhaps so, but in determining whether the use of the upper proprietor *is* reasonable, the size and character of the stream, and the use to which it is subservient are pertinent and important considerations. This is elementary.

The defendants' interpretation of this sub-finding,—that it means that the defendants' use is unreasonable merely because it affects the orators' natural wants,—is unwarranted. All that it means by any fair interpretation is that the defendants' use is unreasonable because, for one reason, the stream is so small that at times it furnishes barely enough water for the orators' domestic uses.

"(b) The use to which the water is put by the defendants is artificial, and by impounding it as before reported, the increased loss by evaporation is such that the same volume of water does not enter the Lawrie Lot that would otherwise find its way there."

Here again the master is using the language of the books, and the defendants' use of the water is properly termed "artificial," as distinguished from "natural." This is so, not because the master says so, but because it is so classed by the law of waters. Angell, Wat. §128. The amount of evaporation caused by the spreading out of the water is certainly a pertinent fact, and taken in connection with the size of the stream may, in some cases, be a controlling fact. And in determining the importance of this matter, the character of the use is properly considered, though it may not be decisive of the question.

"(c) During a considerable portion of each year, water in the pond is so low that it does not flow either over the top of the dam or through the spill-way. At such times, the only water of the stream reaching the Lawrie Lot is that which has escaped through leaks in the dam as formerly described. This has differed in amount at different times and has resulted in an irregular flow of the stream on the Laurie Lot."

By referring to the original report, we find that the stream in question, though small, rises about a mile above the defendants' premises, and flows in a well-defined channel through the Hale Lot in which such premises are located, through the Lawrie Lot to a point therein called "Kelley Head," from which the orators take their supply of water through an aqueduct. The conditions described by the master so reduce the amount of water in the stream below the defendants' dam, that at times there is not enough water to form a stream from the dam to Kelley Head. This condition sometimes' occurred before the dam was built, and in times of extreme drouth the orators'

supply of water failed; but since the erection of the dam, these occasions have increased in number and extent, and the supply of water to the Lawrie Lot has been materially decreased by the maintenance of the dam. The facts set forth in paragraph (e), considered by themselves and in connection with the other findings, become not only pertinent but important in determining the question of reasonable use.

In paragraph (f) the master reports that the quality of the water has materially improved since the original report was filed. This improvement is partly due to the efforts of the defendants and partly to natural causes. Notwithstanding the improvement, however, the water is still undesirable at times for domestic use. The master is unable to say how long these conditions will continue, but the water will be more or less unsuitable for culinary purposes as long as the process of decomposition of the vegetable matter in the pond continues.

In paragraph (g) the master reports that he is unable to suggest a remedy for the increased evaporation caused by the ponding of the water, other than the removal of the dam.

The defendants' objections to the finding of unreasonable use cannot avail them. The whole case shows that it was supported by facts sufficient in law to sustain it. The brook is too small to allow the defendants to make such an use of it if it results in damage to the lower owners while in the exercise of their rights in it.

But are the orators within *their* legal rights? Does the injury fall upon them while in the exercise of *their* legitimate use of the water? The rights of upper and lower riparian proprietors are reciprocal; each owes the other a duty,—the duty of so exercising his rights and so limiting his own appropriation of the water as to keep within the bounds of reasonable use. When he reaches that limit, the lower owner has exhausted his rights in the stream; beyond that limit he may not go without, on the one hand, incurring liability to a lower owner, or, on the other, being without remedy against an upper owner. In this case Lawrie originally owned such a right. That right he could convey to the other orators. More than that he could not convey to them, nor could they acquire more from him. It was said in this case (76 Vt. at p. 253) that the taking of the water by the orators was lawful and beneficial, and that it did not alter

the rights of the defendants or do them actual and perceptible damage. And that for this reason such use by them must be deemed reasonable as to the defendants. The precise question argued and considered was whether the orators, other than Lawrie, being non-riparian owners had any rights against the defendants. This was the point decided, and the language of the Court means no more than this: The fact that such orators were taking the water to their non-riparian lands did not, *per se*, make their use unreasonable. But that fact, together with the size and character of the stream, the quantity of water appropriated, and all the circumstances and conditions, might make their use unreasonable. The stream might furnish water enough to supply this unreasonable use of the defendants and the reasonable demands of the orators;—in which case the latter could not be heard to complain. The mere fact that the defendants reduce the natural flow of the stream would not be decisive. To entitle the orators to relief they must show that they suffer an injury to the use of the water which the law recognizes as belonging to them. *Crawford Co.* v. *Hall*, 67 Neb. 325, 93 N. W. 781. 60 L. R. A. 889, 108 Am. St. Rep. at p. 669. And here is where an important distinction is to be observed—the distinction between the use of a stream which infringes no right of another riparian owner, although it modifies the stream in some way, and a use which infringes his right, although it causes him only nominal damage. The necessities of the orators cannot measure the defendants' rights, any more than the defendants' necessities can measure the orators' rights. "The necessities of one man's business cannot be the standard of another's rights in a thing which belongs to both." *Wheatley* v. *Chrisman*, 24 Pa. St. 298, 64 Am. Dec. 657.

The question under discussion is one of fact, and must be determined before the case will be in condition for final disposition. Otherwise, we might award the orators' damages in whole or in part for being deprived of water which they have no legal right to require the defendants to let down to them—to say nothing of the effect it might have in the determination of the question of granting an injunction.

*Decree reversed and cause remanded with mandate.*