Kennebunk, Kennebunkport

and Wells Water District

*vs.*

Maine Turnpike Authority

York.    Opinion, November 9, 1951.

*Waterhouse, Spencer & Carroll,*
*Hutchinson, Pierce, Atwood & Scribner,* for plaintiff.

*Varney, Levy & Winton,*
*Charles W. Smith,*
*Franklin F. Stearns, Jr.,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MERRILL, J. On report. This case has previously been before this court. *Kennebunk, Kennebunkport and Wells Water District* v. *Maine Turnpike Authority,* 145 Me. 35, 71 Atl. (2nd) 520. It is an action on the case instituted by Kennebunk, Kennebunkport and Wells Water District, hereinafter called the District, against Maine Turnpike Authority, hereinafter called the Authority. The District is a body politic and corporate created by the Legislature of this State for the purpose of supplying water to towns and individuals within its territorial limits. P. & S. L., 1921, Chap. 159. The Authority is a body politic and corporate created in like manner for the purpose of constructing and operating a turnpike from a point at or near Kittery to a point at or near Fort Kent. P. & S. L., 1941, Chap. 69.

The District in this action seeks to recover damages for injury to its water supply, Branch Brook, which injury and

damages it alleges were caused by the Authority by the construction of its turnpike across Branch Brook and its watershed. The injury claimed was the creation of a turbid condition of the water.

In our former opinion we sustained the rejection of a referees' report in favor of the plaintiff. We did this on the ground that the plaintiff neither alleged in its declaration nor established by proof any facts from which it could be found that it had, as against the defendant, the legal right, that is, the proprietary right, to use Branch Brook as a source of public water supply. The legal principles governing our determination of the case were thoroughly discussed and declared in our former opinion. No reexamination thereof is required at this time.

To avoid the impact of our former decision, the plaintiff, after the return of the case to the Superior Court, offered certain amendments to the declaration. These amendments may be summarized as follows: (1) direct allegations that the plaintiff was successor in title to the property and franchises of a private water company, to wit, York County Water Company, created under the name of Mousam Water Company by Chapter 254, Private and Special Laws of Maine, 1891, to which were given further rights and its name changed to York County Water Company by legislative action; that said York County Water Company was the owner of riparian lands, now owned by the plaintiff, which include both banks and the bed of Branch Brook; that the dam, pumping plant, sedimentation plant and water intake of the plaintiff were all located thereon; and that under its charter said private water company was authorized to take water for public distribution from Branch Brook; (2) that both its predecessor in title and itself had acquired a proprietary right to use the waters of Branch Brook as a source of supply for public distribution

by long continued use which had ripened into title by prescription; (3) that the use of the waters of Branch Brook as a source of supply for public distribution was, as against the defendant, a reasonable exercise by the plaintiff of its rights not only as a riparian proprietor, but also of its proprietary rights acquired by prescription.

After making its motion to amend the declaration, the plaintiff then moved to strike off the rule of reference. The defendant challenged the authority of the court to grant either of these motions. Under the terms of the report, if the amendments are allowable save for some purely procedural reason and the declaration as amended would support a finding for the plaintiff which would include as an element of damages the injury to the waters of Branch Brook as a source of public water supply to the plaintiff District, and it is not required that the order of reference be stricken off before amendments be allowed, or the motion that the reference be stricken off may be granted, the amendments are to be allowed as prayed for and the action remanded to the Superior Court for further proceedings in accordance with the opinion of the Law Court.

It is further stipulated in the report that the plaintiff has "brought no condemnation proceedings against and received no conveyances from the predecessors in title of the Defendant as to that parcel of real estate acquired by the Defendant on both sides of Branch Brook upstream from the Plaintiff's land on which its pumping station is located."

The rejection of the referees' report by the justice below became final and conclusive when this court by its mandate overruled the exceptions thereto. In such situation it is clearly within the discretionary power of the court below to strike off the reference. While better practice would dictate that in such situation a formal entry of the striking off of the reference should be made upon the docket,

any action taken by the court below inconsistent with the continued existence of the reference will *ipso facto* and as a matter of law discharge the rule.

If the rule be discharged either by operation of law or by order of the presiding justice, the situation of the case is then the same as though it had never been submitted to referees. Any amendment to the declaration which could have been allowed by the court prior to the reference may be allowed by the court subsequent to the discharge of the rule. Therefore, the fact that this case was formerly before referees has no bearing upon the authority of the court below to allow the proposed amendments.

Rule IV of the Revised Rules of the Supreme Judicial and Superior Courts is as follows:

> "Amendments in matters of substance may be made, in the discretion of the court, on payment of costs, or such other terms as the court shall impose; but if applied for after joinder of an issue of fact or law, the court will in its discretion refuse the application or grant it upon special terms; and when either party amends the other party shall be entitled also to amend, if his case requires it. No new count or amendment of a declaration will be allowed, unless it be consistent with the original declaration, and for the same cause of action."

Within the meaning of this rule of court, the proposed amendments are not only consistent with the original declaration but they are for the same cause of action.

The fact that a plaintiff claims to recover for the same items and cause of action but to do so upon different principles and rules of law than those which could have been applicable to the declaration as unamended does not violate the conditions laid down in Rule IV. See *Brewer* v. *East Machias*, 27 Me. 489. "A declaration so defective, that it would exhibit no sufficient cause of action, may be cured by

an amendment without introducing any new cause of action. This is often the very purpose of the law authorizing amendments. The intended cause of action, when defectively set forth, may be as clearly perceived and distinguished from another cause of action, as it would be, if the declaration had been perfect." *Pullen* v. *Hutchinson,* 25 Me. 249, 252. See also *Frost* v. *Company,* 126 Me. 409 at 412. In the latter case it was said: "The very purpose of an amendment is to cure defects. If without the amendment the action could be maintained, no amendment is necessary."

There is, however, one further requirement relating to the allowance of amendments. The declaration as amended must set forth a good cause of action. *Gilbert and Beckler* v. *Dodge,* 130 Me. 417; *Garmong* v. *Henderson,* 112 Me. 383. In other words, the declaration if amended as proposed must not be demurrable. The offered amendments, however, are not challenged on this ground.

The issue now before this court, however, is narrowed by the following stipulation in the report. If the Law Court should decide (2) that the declaration if amended as prayed for "would not be sufficient to support a finding for the plaintiff which would include as an element of damages the injury to the waters of Branch Brook as a source of public water supply to the plaintiff District x x x x x judgment is to be ordered for the defendant."

In our prior decision we held that the plaintiff's proprietary right to use the waters of Branch Brook stemming from its ownership of riparian lands was restricted to riparian purposes. We further held that the use of the waters of a brook by a riparian proprietor as a source of water supply for public distribution was not a riparian use. We further held that a charter authorizing the use of the waters of a brook as a source of water for public distribution by either a public water district or a private water company

is not a grant to such district or company of any proprietary right and ownership in or to the use of the waters mentioned therein for such purpose. Such charter but marks out and defines the sources of water supply which the corporation within the terms of its charter may use. We further held in our former opinion that if, as here, the use of the waters be a non-riparian use, the right to exercise the same must be acquired by purchase or grant from or by the exercise of eminent domain against *those whose rights it is sought to restrict* by the exercise of such use. We further held that unless so acquired the non-riparian use will not be a reasonable use against an upper riparian proprietor and its exercise will not be a factor entering into the determination of whether or not the use of his land by an upper riparian proprietor is a reasonable one as against the lower proprietor. The upper proprietor may make any use of his land not forbidden by law that he could make if such use by the lower proprietor was not being exercised.

A prescriptive right cannot be acquired against one whose right is not invaded and who cannot bring an action for the invasion thereof. While a riparian proprietor may make reasonable diversion or abstraction of the water for a riparian use, he can make neither for a non-riparian use. Diversion without return, or abstraction of the water for a non-riparian use, as against a lower riparian owner, is an invasion of his riparian rights. If such diversion or abstraction be continued for the period and under the conditions requisite for prescription it will, as against such lower proprietor, ripen into a prescriptive right. An action lies by a riparian proprietor for the wrongful invasion of his riparian rights even though there be no actual damages. *Blanchard* v. *Baker,* 8 Me. 253. This decision rendered in 1832, has never been questioned by this court.

On the other hand, it is perfectly clear that the abstraction of water for a non-riparian use by a lower riparian proprietor does not invade any right of the upper riparian proprietor. His interest in the water after it passes his land ceases. As no right of the upper proprietor is invaded by such use, no right of action therefor exists in his favor. The fact that a riparian proprietor acquires a prescriptive right against a lower riparian proprietor to make a non-riparian use of water gives him no right by prescription against the upper riparian proprietor. Their relative respective rights remain the same as before.

A prescriptive right is no greater right than could have been acquired by a grant from those against whom the right is acquired by prescription. In the present situation none of the owners of riparian land situated below the lands of the plaintiff had, as riparian proprietors, any proprietary right to use the waters of Branch Brook as a source of supply for public distribution. Not having such right they could neither individually, nor collectively, convey such right to the plaintiff. An appropriate deed of such right from a lower riparian proprietor, however, would estop him and his successors in title from objecting to such use of the water by the upper proprietor who was his grantee in such deed. In like manner, proper deeds from all of the lower riparian proprietors could estop them and their successors in title from preventing their grantee from making a non-riparian use of the water which they had purported to convey by such deeds.

The rule that a non-riparian use by a lower riparian proprietor is not a factor in determining whether the use of its land by an upper proprietor is a reasonable use, applies whether such lower riparian proprietor making such non-riparian use be a grantee from or has as against other still lower riparian proprietors obtained the right so to do by

prescription. In other words, one using the waters of a stream as a source of public supply cannot *as against upper riparian proprietors* obtain from lower riparian proprietors, either by grant or prescription, rights which the lower proprietors do not themselves possess.

Although the plaintiff in this case may have acquired the right to use the waters of Branch Brook as a source of supply for public distribution as against all lower riparian proprietors, it has not, either by prescription, purchase, grant, or by the exercise of eminent domain acquired such right from or against the defendant, an upper riparian proprietor. Therefore, the exercise of such use by the lower proprietor "will not be a factor entering into the determination of whether or not the use of his land by an upper riparian proprietor (here the defendant) is a reasonable use thereof. The upper proprietor (here the defendant) may make any use of his land not forbidden by law that he could make if such use by the lower proprietor was not being exercised." See our former opinion in this case as reported in 145 Me. 35, 52, 71 Atl. (2nd) 520 at 530.

We hold as a matter of law that, as against the use of the water of Branch Brook by the District as a source of public water supply, the use by the Authority of its own land for the purpose of constructing the turnpike was a reasonable one. In constructing the turnpike, the Authority had a legal right to do all things incidental thereto. It could remove growth from the soil, establish grades, make cuts and fills and bridge the brook. Within the confines of its own land it could divert the brook, provided it returned it to its original channel. It could even erect spoil piles of the extra earth and material removed and for which it had no use. These things were incidental to the prosecution of a lawful use of its own land. These things did not *per se*, either individually or collectively constitute an unreasonable use

by the defendant of its own land with respect to the use of the waters of Branch Brook by the plaintiff as a source of public water supply.

To allow a water company or a water district to restrict the lawful use that upper riparian proprietors might otherwise make of their lands by a prescriptive use of the waters against lower proprietors would confer upon such districts or companies the right to appropriate the watershed of a stream by prescription against those who could not bring an action to prevent it. If control of the watershed of a stream for the purpose of protecting its water supply be desired by a water company or water district, it should be acquired by purchase, or if such power be, as here, conferred upon it, by the exercise of the right of eminent domain. It cannot, as against upper proprietors, be acquired by a prescriptive use of the water for such purpose. In the instant case the District had obtained no rights in or against the defendant's land by grant, eminent domain, prescription or otherwise.

The case *Stockport Waterworks Company* v. *Potter et als.*, 3 H. & C. 300, 159 Eng. Repr. 545, which overruled the prior decision in the same case reported in 7 H. & N. 160, 158 Eng. Repr. 433, held that a prescriptive right to use water from a stream for public distribution was insufficient to justify recovery of damages against an upper riparian proprietor for pollution of the stream. In this case Pollock, B., speaking for the majority of the court, said:

"But a third and conclusive answer, as it seems to us, was given to such an easement.
The defendants' land is far higher up on the stream than the conduit or tunnel at Nab Pool Weir by which the plaintiffs abstract the water.
No amount of water abstracted by the plaintiffs or those under whom they claim could possibly be felt by the defendants. If the water was abstracted

unlawfully or in excessive quantities, or not returned into the river the proprietors below might have cause to complain, but the defendants could not, because they could not be affected by it. They had neither the will nor the power to interfere with the plaintiffs' use nor to take legal proceedings against them.

No grant could therefore be presumed by the defendants because no user ever existed adverse to their full enjoyment of the water. And *Sampson* v. *Hoddinott* (1 C. B. N. S. 590, 611) was cited as an express authority for this proposition."

The case of *Pennsylvania R. Co.* v. *Sagamore Coal Co.*, 281 Pa. 233, 126 Atl. 386, 39 A. L. R. 882 is especially relied upon by the plaintiff. This case was a bill in equity to enjoin as a public nuisance the discharge of acid mine waters into a creek by the defendant, an upper riparian proprietor. There were several plaintiffs. The railroad company was itself using water for a public use. Other plaintiffs were using it as a source of public water supply. The State became a party by intervention. The court held that the defendant was polluting water used by the public. The court said:

"In the view we take of it, the controversy compacts itself within closer bounds than it had in the minds of counsel, and, although its public importance is very great, it is controlled by one fact and a single equitable principle — the fact that the stream has been polluted, and the principle that this creates an enjoinable nuisance if the public uses the water."

The court then held that the pollution by an upper riparian proprietor of a source of public water supply or water which was used for a public use was a public nuisance and, as such, could be enjoined for the protection of the public. They held that the determining factor was the public use of the stream, saying "It is the use of the water

by many people that makes it 'public use,' in applying the nuisance doctrine — not the fact of how the water is taken from the stream for their use, whether in the mains of a water company or by them in buckets." This case, however, does not even discuss the question of damages or whether they were recoverable by the ones distributing the water for public use.

In the case *Baltimore* v. *Warren Manufacturing Co.*, 59 Maryland 96, cited by the plaintiff, an injunction was granted to the city to restrain the defendant, an upper riparian proprietor, from defiling the stream on which the city was *a lower riparian proprietor* and from which stream the city took water for public distribution. The court held that pollution of a stream by an upper riparian proprietor for the prescriptive period would ripen into a prescriptive right *against the lower proprietor*. The case stands for the doctrine that *a riparian proprietor* to protect the invasion of his private rights *as a riparian proprietor* by unlawful pollution of the stream by an upper riparian proprietor is entitled to redress by action at law and, in case the nuisance be continued, to relief by injunction. *City of Aberdeen* v. *Lytle Logging & Mercantile Co.*, 108 Pac. (Wash.) 945, was likewise an injunction case and the question of the plaintiff's right to use the water for public distribution was not an issue.

By the terms of the report in this case damage to the plaintiff's right to use the water for riparian purposes is excluded from our consideration nor do we pass upon that question. The use of the water for public distribution in this State is a non-riparian use, and a use of the water by the plaintiff which cannot be a factor in determining as between the plaintiff and the defendant whether or not the use by the defendant of its upper riparian land is a reasonable use. Whether or not the acts of the defendant could have

been restrained as a common law or statutory public nuis-ance by action instituted in behalf of the public, or as a private nuisance for invasion of the plaintiff's rights as a riparian proprietor to make riparian use of the water is not before us and, under the terms of the report, need not be decided by us. By the terms of the report it is only if "The declaration as amended would support a finding for the plaintiff which would include as an element of damages the injury to the waters of Branch Brook as a source of public water supply to the plaintiff District," that the amendments are to be allowed and the action remanded to the Superior Court for further proceedings in accord with the opinion of the Law Court.

The fact that the use of its lands by the defendant for the purpose of constructing a turnpike was a reasonable use as against the plaintiff's use of the waters of Branch Brook as a source of supply for public distribution is not necessarily determinative of the issue now before us. In our former opinion, as reported in 145 Me. 35, 43, 71 Atl. (2nd) 520, 525, we recognized the principle that although a use of its land by an upper proprietor may in and of itself be a reasonable one, the manner of its use may be so negli-gently conducted that it becomes unreasonable as against the rights of the lower riparian proprietor. This is but an-other example applying the doctrine *sic utere tuo ut alienum non laedas,* so use your own that you will not injure the property of another.

In this case although the plaintiff had not acquired the right to use the waters of Branch Brook as a source of pub-lic water supply so that it could prevent the defendant from constructing the turnpike on its land, the plaintiff's use of the waters for such purpose was not illegal, nor was it, as against the defendant, unlawful in the sense that it invaded any rights of the defendant.

The defendant, according to the allegations in the declaration, had knowledge of the use the plaintiff was making of the waters. The declaration alleged that the defendant in prosecuting the work of constructing the turnpike unnecessarily, negligently, recklessly, carelessly, wantonly and unlawfully so conducted the same in certain respects that it thereby caused the turbidity of the water of which the plaintiff complains. Certainly the defendant had no right to intentionally or wilfully interfere with the use which the plaintiff was making of the waters of Branch Brook. On the other hand, all damages necessarily caused to the waters of Branch Brook as a source of public water supply by the prosecuting of the defendant's work of constructing the turnpike would be *damnum absque injuria*. There is, however, a mean between these two extremes for which the defendant might become liable in damages for injuring the waters of Branch Brook as a source of public water supply. To define as an abstract proposition just where this liability would be incurred is extremely difficult and involves so many variable factors that we will not attempt to do so at this time. It must be borne in mind that at this time we are but passing upon the sufficiency of the declaration. We have no facts or evidence before us as we did at the time we rendered our former decision. Nor can we presume that the record, if again taken out, will not contain facts in addition to those which were contained in the record when it was before us the first time. We must presume that the evidence will establish every allegation in the amended declaration. The declaration contains averments which, if true and established by evidence, would justify a recovery for damages actually suffered by the plaintiff, down to and including the date this action was commenced, because of the injury to the waters of Branch Brook as a source of public water supply. This being true, under the terms of the report the amendments are to be allowed as prayed for and

the action is hereby remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*