**Edward E. STANTON et al.**

v.

**TRUSTEES OF ST. JOSEPH'S COLLEGE.**

Supreme Judicial Court of Maine.

June 27, 1969.

Robert L. Cram, and Edward C. Dalton, Jr., Falmouth, for plaintiff.

Mahoney, Desmond, Robinson & Mahoney, by Robert C. Robinson, Portland, for defendant.

Robert G. Fuller, Jr., Asst. Atty. Gen., Augusta, for State of Maine as amicus curiae.

Before WILLIAMSON, C. J., and TAPLEY, MARDEN and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

This is an appeal from the granting of a summary judgment for the plaintiff riparian land owners, with a permanent injunction against the discharge by the defendants of treated effluent or other material emanating from St. Joseph's College as now located into Wescott Brook, a non-navigable stream.

The Court found no genuine issues as to material facts and that the plaintiffs were entitled to prevail as a matter of law. M. R.C.P., Rule 56. We affirm.

The Court in its opinion said in part: "The Water Improvement Commission is without jurisdiction or legal competence to decide the private rights of these parties and the Court must now adjudicate these

rights without reference to any finding or determination by that body. Stanton v. Trustees of St. Joseph's College (Me.) 233 A.2d 718 (1967).

"The following facts are revealed as undisputed by the documents at hand. St. Joseph's College is located on a large tract of land on the shore of Sebago Lake and some distance from Wescott Brook. There is a natural land elevation between this location and Wescott Brook so that the College campus is not within the natural watershed of the brook. The defendant, faced with a most difficult problem of sewage disposal caused in part by its proximity to Sebago Lake, a public water supply, proposes and intends to build a treatment plant at the present college location and thence pump the treated effluent overland to be discharged into Wescott Brook. To this end it has acquired one lot on the shore of the brook and bounded by the thread of the stream. It has also acquired easements to permit discharge on or from the land of two riparian owners. Its own lot and the easement locations are upstream from some if not all of the plaintiffs. The intended rate of discharge is 50,000 gallons per day which would alone create a stream approximately 6 to 8 inches high and 6 to 8 inches wide. Wescott Brook is a small stream which is spring fed and maintains a constant flow. Above the springs, however, the stream bed is sometimes dry in a dry season. Although there remain factual disputes as to whether or to what extent the stream would be polluted by the addition of the treated effluent or acquatic life would be affected thereby, there can be no dispute that the constant addition of this liquid waste would to some extent change the nature of the water quality from its natural state and would alter the natural flow."

\*    \*    \*    \*    \*    \*

"It is not disputed that the proposal is to make the stream serve the needs of defendant's property on the shore of Sebago Lake, far removed from the stream itself. But the stream is not "subservient" to that land and cannot lawfully be made so. The proposed use is not for the benefit or in the service of either the land or easements acquired by the defendant along the stream. They are mere conduits and are themselves as such employed in the service of defendant's non-riparian property. However reluctantly, the Court is compelled by stare decisis to conclude that defendant would not be 'using the (brook) for a *proper purpose* and in the *kind of business* to which the stream was subservient.' (*First Turnpike case*, below p. 45) Since defendant has no legal right to make the brook serve the needs of its non-riparian land, its intended use is unreasonable as a matter of law."

The decision below was based squarely on Kennebunk, Kennebunkport and Wells Water District v. Me. Turnpike Authority, 145 Me. 35, 71 A.2d 520 (1950) *(first Turnpike case)*. Our Court there held as a matter of law that the water district, a downstream riparian owner, having failed to establish a legal right to take water for sale to the public was not making for such purpose a reasonable use of the stream and that the water district therefore could not recover for damage to its nonriparian use by an upstream riparian owner. The test of reasonable use of the waters of a non-navigable stream by riparian owners for riparian purposes was thus not applicable. Lockwood Co. v. Lawrence, 77 Me. 297, 316; Stanton v. Trustees of St. Joseph's College, supra; Opinion of Justices, 118 Me. 503, 506, 106 A. 865; 93 C.J.S. Waters §§ 9, 55.

Whether the acts of the Turnpike Authority rendered the quality of the water "so impure, viz., so turbid, that it was unfit for distribution by the plaintiff [water district] to its customers" was not material. (First Turnpike case p. 39 of 145 Me., p. 524 of 71 A.2d) See also Kennebunk et al. Water District v. Me. Turnpike, 147 Me. 149, 84 A.2d 433 (1951) *(second Turnpike case)*.

In the *first Turnpike case*, the use held not protected was the diversion of water

for sale to the public. Here the defendants seek to use the water of the brook as a conduit or enlarged sewer to carry daily 50,000 gallons of sewage waste material or effluent originating outside the water shed on non-riparian land. The land used for discharging the effluent is intended to be used for no other purpose connected with the waters of the brook. For example, the College is not located on riparian land or the land is not used for grazing cattle, or for industrial purposes from which waste might be anticipated.

The governing principles were stated by our Court (*first Turnpike case*) as follows: (Pp. 45, 51 of 145 Me., p. 527 of 71 A.2d)

"Whether or not the [riparian owner] was making a reasonable use of the waters of the brook depends not only upon the use which it was actually making of the same but also * * * upon whether it was using the same for a *proper purpose* and in the *kind of business* to which the stream was *subservient*. Unless the [riparian owner] had the legal right, that is, the proprietary right, to use Branch Brook as a source of public water supply, its use of water therefrom for such purpose was neither a *proper one* nor was it a use to which the brook was *subservient*. Reasonableness of its use depends upon its legal right to exercise the same."

"If the use exercised by a riparian proprietor be a riparian use, the right to exercise it was acquired as a usufructuary right growing out of and annexed to the ownership of the riparian land. If, however, as here it be a non-riparian use, the right to exercise the same must be acquired by purchase or grant from, or by the exercise of the right of eminent domain against those whose rights it is sought to restrict by the exercise of such use. Unless so acquired, the non-riparian use will not be a reasonable use against either upper or lower riparian proprietors, * * *."

See also *second Turnpike case.*

In principle, we are unable to distinguish the first Turnpike case from the case before us.

"When an upstream riparian owner's activities cause damge to a downstream riparian, the riparian doctrine usually requires that the reasonableness of both upstream and downstream uses be calculated and considered. However, if the downstream use is unlawful, the lower riparian will not be allowed to complain against the upstream use. In a recent Maine case, [Kennebunk, Kennebunkport & Wells Water District v. Maine Turnpike Authority, 147 Me. 149, 82 A.2d 433 (1951)] the court stated that a lower nonriparian diversion for a municipal water supply was not entitled to be tested by the reasonable use doctrine. Therefore, the question of the reasonableness of the upper use did not have to be considered.

"In this case, a lower riparian water district sought damages from the turnpike authority upstream, which it claimed had created a turbid condition in the water. The court said that the water district should have acquired the right to divert water, by purchase or grant from, or by the exercise of eminent domain against those whose rights it sought to restrict by the exercise of such use. As noted earlier, however, neither New Hampshire nor Vermont would apply this rule. [Gillis v. Chase, 67 N.H. 161, 31 A. 18 (1891); Lawrie v. Silsby, 82 Vt. 505, 74 A. 94 (1909)]"; Water Law: Streamflow Rights in New England and New York State, James H. Kendall, Esq., p. 10 (1967).

In the instant case the upstream use is nonriparian and hence the upstream riparian owner will not be allowed to assert the reasonable use doctrine against the lower riparian owners.

We are urged to reconsider the principles of the *Turnpike cases* and to adopt a

rule permitting the use of the stream sought by the defendants in the absence of actual perceptible damage to the plaintiffs.

The rule is illustrated by Stratton v. Mt. Hermon Boys' School, 216 Mass. 83, 103 N.E. 87, 49 L.R.A.,N.S., 57 (1913), in which the School by pumps on riparian land diverted water to non-contiguous land in another watershed for school purposes. On the facts it was found that the plaintiff, owner of a mill upon a small stream, suffered substantial damage. The Court said in 103 N.E. at p. 89:

"The governing principle of law in a case like the present is this: A proprietor may make any reasonable use of the water of the stream in connection with his riparian estate and for lawful purposes within the watershed, provided he leave the current diminished by no more than is reasonable, having regard for the like right to enjoy the common property by other riparian owners. If he diverts out of the watershed or upon a disconnected estate the only question is whether there is actual injury to the lower estate for any present or future reasonable use. The diversion alone without evidence of such damage does not warrant a recovery even of nominal damages."

See also 56 Am.Jur., Waters § 351.

In *Stratton* the water of the stream was diverted beyond the watershed and thus the flow of the stream was diminished. Here the effluent from beyond the watershed would be added to the flow of the stream.

■ Under the *Stratton* rule it is argued that the discharge of the effluent into the brook is a proper riparian use and is permissible in the absence of actual perceptible damage. In our view, however, resting on the principles of the *Turnpike cases*, the use of the defendants' riparian land, owned or leased by it, for discharge of the effluent under the circumstances would be a non-riparian use. The test then is not whether there is reasonable use between riparian owners, or whether actual

perceptible damage results from such use. The proper test is whether the right of the plaintiffs to the waters of the brook undiminished in quantity and quality is breached. We are not prepared to adopt the rule of the *Stratton* case. Annot. 14 A.L.R. 330.

In the *second Turnpike case* we said at p. 155 of 147 Me., at p. 437 of 84 A.2d:

"A prescriptive right cannot be acquired against one whose right is not invaded and who cannot bring an action for the invasion thereof. While a riparian proprietor may make reasonable diversion or abstraction of the water for a riparian use, he can make neither for a non-riparian use. Diversion without return or abstraction of the water for a non-riparian use, as against a lower riparian owner, is an invasion of his riparian rights. If such diversion or abstraction be continued for the period and under the conditions requisite for prescription it will, as against such lower proprietor, ripen into a prescriptive right. An action lies by a riparian proprietor for the wrongful invasion of his riparian rights even though there be no actual damages. Blanchard v. Baker, 8 Me. 253. This decision, rendered in 1832, has never been questioned by this Court."

The principle is equally applicable to the non-riparian use of the waters of the brook for the discharge of the effluent by the College.

■ To summarize: The plaintiffs, downstream riparian owners, have certain rights to the waters of the stream unchanged in quantity and quality, except by reasonable riparian uses of other riparian owners. We are here concerned with the private rights of the riparian owners on the stream. The defendants seek to use Wescott Brook for non-riparian purposes under circumstances violating the rights of the plaintiffs. The use which may be today's injury without damage may ripen into prescriptive rights in the defendants limiting the legal and valuable rights of

the plaintiffs, and so may be challenged and enjoined before the commencement of the unlawful use.

█ The plaintiffs' rights as riparian owners are entitled to protection against the proposed invasion by the defendants by a non-riparian use for the latter's benefit. The plaintiffs are not required to submit to the discharge of the sewage waste or effluent into the waters of the brook passing over their land under the circumstances.

The entry will be

Appeal denied.

WEBBER and DUFRESNE, JJ., did not sit.